## State of Connecticut *v.* Isiah Thompson (6606)

Spallone, O'Connell and Norcott, Js.

Argued October 4—decision released December 5, 1989

*Robert J. Sweeney,* special public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *C. Robert Satti, Jr.,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant appeals from his convictions, after a jury trial, of two counts of possessing and selling cocaine in violation of the state dependency-producing drug law, General Statutes § 21a-278 (b). The defendant claims that the trial court erred in its jury instructions on the element of possession and in refusing to permit the defendant to call the prosecuting attorney as a witness. We find no error.

The jury could have reasonably found the following facts. At about 10 p.m. on December 22, 1986, the Bridgeport police established a drug surveillance in the State Street and Lee Avenue area. Officer Daniel Herlihy conducted his surveillance, with the aid of field glasses, from the front porch of a building on Lee Avenue. He observed the defendant standing near the rear of an automobile abandoned on the street. For approximately two hours, Herlihy observed the defendant's repeated pattern of activity. The defendant would hail passing cars by waving or shouting. The car would stop and the driver or passenger would approach the defendant and engage in brief conversation. The defendant would bend down, pick up something from the ground at the rear of the abandoned car and exchange items with the driver or passenger of the waiting vehicle.

At approximately 11 p.m., Herlihy stopped a vehicle driven by a person who had just completed such an exchange with the defendant. The driver handed the officer a small white packet, later determined to contain cocaine. The defendant was immediately placed under arrest, searched and found to be in possession of $244 but no drugs. The area near the abandoned car was searched and seven packets of white powder, later determined to be cocaine, were found on the road under the right rear fender.

At trial, the defendant denied any connection to the drugs found by the abandoned car. The defendant sub-

mitted a request to charge the jury on the issue of possession and claims that the trial court erred in failing to include a requested paragraph in the jury instructions. The defendant would have had the court charge that if the jury found the defendant not to be in *exclusive control of the premises,* it could not, without additional evidence, infer that the defendant knew of the presence of the drugs.[1] Because the narcotics were located in a public area beneath an abandoned car, the defendant argues, the jury had to find, beyond a reasonable doubt, that the defendant was in exclusive control of the drugs. We disagree.

The charge on exclusive possession requested by the defendant is inappropriate in this case. The charge originated in *Evans* v. *United States,* 257 F.2d 121, 128 (9th Cir.), cert. denied, 358 U.S. 866, 79 S. Ct. 98, 3 L. Ed. 2d 150 (1958), and the exclusive control determination has been applied to cases concerned with the possession and control of drugs in "premises," e.g., apartments, homes, and motor vehicles containing at least two people. See *State* v. *Delossantos,* 211 Conn. 258, 277–78, 559 A.2d 164, cert. denied,     U.S.     , 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989); *State* v. *Alfonso,* 195 Conn. 624, 633, 490 A.2d 75 (1985); *State* v. *Santiago,* 17 Conn. App. 273, 278, 552 A.2d 438 (1989); *State* v. *Pena,* 16 Conn. App. 518, 525, 548 A.2d 445, cert. denied, 209 Conn. 803, 552 A.2d 1217 (1988). These cases hold that the exclusive control of premises supports an inference that the resident or owner is aware and in control of any contraband present. If, however, the resident is not in exclusive control of the

---

[1] The defendant requested the following instruction. "Therefore, if you find that the defendant was not in exclusive possession of the premises where the narcotics were found, in order to infer that he knew of their presence, and that he was in control of them, you must also find that he made an incriminating statement or that there are other circumstances which tend to support that inference."

premises, specific evidence of knowledge and control is required to support the inference of possession.

The defendant offers no explanation nor cites any supportive authority for why this court should consider an abandoned car to be "premises," to be treated at law as if it were a car with multiple occupants. Unlike the cases concerned with the control of premises, the defendant's possession of the drugs was not inferred from his exclusive control of the abandoned car. The defendant was charged with the knowing possession of matter known to be contraband with the intent to sell. Possession, actual or constructive, was defined in the trial court's jury instructions as "the power to exercise dominion or control over *the drugs.*" (Emphasis added.) Possession and control of the car was not at issue.

We conclude that the charge as given was correct and appropriate. The court correctly defined the elements of the crime. The jury could reasonably have found that the defendant knew the packets were under the car and knew the packets contained drugs. Notwithstanding that the drugs were found in a publicly accessible area, the jury could have reasonably found that the defendant exercised dominion and control over, and so was in possession of, the contraband. See *State* v. *Melillo,* 17 Conn. App. 114, 117–18, 550 A.2d 319 (1988) (defendant found in possession of drugs hidden in base of tree).

In his second claim of error, the defendant asserts that the trial court should have permitted him to call the prosecutor, assistant state's attorney C. Robert Satti, Jr., to the stand. Prior to this trial, Satti had filed an amended information against John Colter charging Colter with the sale of narcotics. Satti also argued the facts of the information to the court when Colter later changed his plea to guilty. Colter had been arrested

at the same time, date and place as the defendant for activities unrelated to the defendant. The amended information filed by Satti states the time of Colter's arrest as 10 p.m. The defendant argues that because he was arrested after 11 p.m., evidence concerning the time discrepancy would tend to contradict the testimony of Herlihy. The defendant's motion to disclose exculpatory information requested that the state make available the Colter amended information and Satti's testimony from Colter's change of plea proceeding. The motion was denied, as was the defendant's subsequent request to examine Satti at trial on his prior statements. The defendant claims that he was impermissibly denied the opportunity to introduce evidence that would have put in doubt Herlihy's identification of the defendant. We disagree.

Rule 3.7 of the Rules of Professional Conduct[2] codifies what is commonly called the "advocate-witness rule," and many cases have considered the application of this rule to determine whether a client may seek testimony from his own lawyer at trial. The rule permits an attorney actively participating in the case to be a witness as to merely formal matters but discourages testimony as to other matters on behalf of his client except when essential to the ends of justice. *State* v. *Blake,* 157 Conn. 99, 102, 249 A.2d 232 (1968), citing Number 19 of the Canons of Professional Ethics; see also *State* v. *Rapuano,* 192 Conn. 228, 231, 471 A.2d 240 (1984).

---

[2] Rule 3.7 of the Rules of Professional Conduct, entitled Lawyer as Witness, provides in pertinent part:

"(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

"(1) The testimony relates to an uncontested issue;

"(2) The testimony relates to the nature and value of legal services rendered in the case; or

"(3) Disqualification of the lawyer would work substantial hardship on the client."

The rule does not render the attorney incompetent as a witness or disqualify him from testifying, although it may be a serious impropriety for him both to testify and to continue active participation in the case. *State v. Blake,* supra; *Lebowitz* v. *McPike,* 151 Conn. 566, 570, 201 A.2d 469 (1964); *Puglio* v. *Puglio,* 18 Conn. App. 606, 608, 559 A.2d 1159 (1989). To have an advocate-witness, the party must demonstrate the necessity for the testimony, such as "an emergency the likelihood of which could not reasonably have been anticipated in time for [the attorney] to withdraw from the case before trial." *State* v. *Blake,* supra.

The Supreme Court has applied this unforeseeable exigency standard to cases in which a party wanted to have his own attorney as a witness. See, e.g., *State* v. *Rapuano,* supra; *State* v. *Blake,* supra; *Lebowitz* v. *McPike,* supra; *Miller* v. *Urban,* 123 Conn. 331, 334, 195 A. 193 (1937). The courts in this state have not previously had an opportunity to consider the standard to be applied where, as here, a criminal defendant seeks testimony from the prosecuting attorney. There are, however, numerous federal cases that address this issue and that consistently apply the test of "compelling need." See, e.g., *United States* v. *Prantil,* 764 F.2d 548 (9th Cir. 1985); *United States* v. *Dack,* 747 F.2d 1172 (7th Cir. 1984); *United States* v. *Schwartzbaum,* 527 F.2d 249 (2nd Cir. 1975), cert. denied, 424 U.S. 942, 96 S. Ct. 1410, 47 L. Ed. 2d 348 (1976).

This compelling need test is consistent with the advocate-witness rule in that there is no absolute bar to calling a participating prosecutor as a witness. The possibility for abuse, however, is of such a magnitude as to require the satisfaction of a higher standard. *United States* v. *Prantil,* supra, 554. In *United States* v. *Birdman,* 602 F.2d 547, 553–55 (3rd Cir. 1979), cert. denied, 444 U.S. 1032, 100 S. Ct. 703, 62 L. Ed. 2d 668 (1980), the United States Court of Appeals for the

Third Circuit examined the case law and identified four policies served by applying the compelling need standard to the situation of prosecutor-witness.

First, there is the risk that the prosecutor may not be a fully objective witness. Id., 553. Second, there exists the justifiable fear that, when a prosecutor takes the witness stand, "the prestige or prominence of the prosecutor's office will artificially enhance his credibility as a witness." *United States* v. *Johnston,* 690 F.2d 638, 643 (7th Cir. 1982). Third, the jury may understandably be confused by the prosecutor's dual role. Id. The jury would be required to segregate the factual testimonial account of the prosecutor-witness from the exhortations of the prosecutor-advocate. *United States* v. *Prantil,* supra, 553. "Naturally, the potential for jury confusion is perhaps at its height during final argument when the prosecutor must marshall all the evidence, including his own testimony, cast it in a favorable light, and then urge the jury to accept the government's claims." Id. Finally, a broader concern for public confidence in the administration of justice suggests the maxim that " 'justice must satisfy the appearance of justice.' " *United States* v. *Johnston,* supra; *United States* v. *Birdman,* supra, 554. Public confidence in our criminal justice system may be eroded by even the appearance of impropriety. *United States* v. *Prantil,* supra.

Permitting a defendant to call his prosecuting attorney as a witness, therefore, "inevitably confuses the distinctions between advocate and witness, argument and testimony, [and] is acceptable only if required by compelling and legitimate need." *United States* v. *Schwartzbaum,* supra, 253. Because these concerns implicate fundamental tenets of our adversarial system, we adopt the federal standard. Accordingly, we hold that a defendant must demonstrate a compelling need before a participating prosecutor will be permitted to testify.

The trial court is charged with making the determination of the materiality of the witness' testimony and must, of course, honor the defendant's constitutional rights of confrontation and compulsory process. *United States* v. *Prantil,* supra, 552. The defendant who wants to call his prosecutor as a witness must demonstrate that the testimony is necessary and not merely relevant, and he must show that he has exhausted other available sources of comparably probative evidence. Id., 551.

The defendant in the present case does not meet the requirements of the compelling need test. The defendant states that he would have examined the prosecutor as to the hour of Colter's arrest, as specified by the prosecutor in the Colter amended information and at the subsequent plea proceeding. This detail would have been used to impeach Herlihy's credibility. The prosecutor's testimony for impeachment purposes was not vital to the defense. See id., in which the prosecutor's testimony was vital to the defense because he was both a witness to and a participant in the factual events at issue.

The defendant had alternate means that he did not exhaust of bringing the evidence before the jury. Colter himself testified for the defense and could have been examined concerning the hour of his arrest. The amended information could have been used, if necessary, to refresh Colter's memory. Colter's amended information and the transcript from his plea proceeding would have been sufficient in themselves to establish inconsistencies. See *United States* v. *Schwartzbaum,* supra (prosecutor not needed to testify to government prepared memorandum). Upon the defendant's request, the court could have taken judicial notice of the documents. See *State* v. *Crump,* 201 Conn. 489, 500, 518 A.2d 378 (1986); *State* v. *Lenihan,* 151 Conn. 552, 554,

200 A.2d 476 (1964). There was no compelling need to examine Satti and the court committed no error in refusing the defendant's request to do so.

There is no error.

In this opinion the other judges concurred.