Kenneth J. RUDOLPH, a/k/a Kenneth Olivas, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

Kenneth J. RUDOLPH, a/k/a Kenneth J. OLIVAS, a/k/a Kent Randolf, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

Nos. 91–117, 91–118.

Supreme Court of Wyoming.

April 7, 1992.

Leonard D. Munker, State Public Defender, Cheyenne, Public Defender Program, Gerald M. Gallivan, Director, Richard R. Jamieson, Student Intern, Laramie, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., Prosecution Assistance Program, Theodore E. Lauer, Director, Roger Edward Cockerille, Student Intern, Cheyenne, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

In this consolidated matter, Kenneth Olivas a/k/a Kenneth Rudolph was convicted of felony theft of services under Wyo.Stat. § 6–3–408(a)(i) (1988). As a result, the court revoked the probation he was serving based on a prior conviction. Appellant contends that he was denied the opportunity to present his defense to the felony theft of services charge because the trial court did not allow him to call the assistant district attorney as a defense witness.

We affirm.

### ISSUES

Appellant raises the following issues on appeal:

I. Whether the trial court abused its discretion in refusing to allow the defendant to call the assistant district attorney as a defense witness and thereby denied the defendant his constitutional right to call witnesses in his behalf and the opportunity to present a defense?

II. Whether the [assistant] district attorney should have disqualified himself from prosecuting the case when he learned he was going to be called as a defense witness?

The state describes the issues this way:

I. Did the district court abuse its discretion when during trial it refused appellant's request to call the deputy district attorney as a witness?

II. Did the refusal of the district court to permit the deputy district attorney to be called as a witness by appellant deny appellant's constitutional rights to compel the attendance of witnesses in his favor and to present a defense to the charges against him?

III. Was the deputy district attorney under a legal or ethical obligation to withdraw from further participation in the case when appellant's attorney informed him of her intention to call him as a witness?

### FACTS

On July 4, 1990, Patrolman Thek noticed a dark colored car with Washington state license plates pass a semi tractor-trailer on U.S. 30 near Kemmerer, Wyoming. The car was traveling at a high rate of speed. When Patrolman Thek pulled the vehicle over he ran a check on the driver's license and the report indicated that he had stopped a wanted felon and should use extreme caution. Appellant was reported as a wanted felon because he had violated the terms of his probation from a 1986 burglary in Wyoming. Patrolman Thek placed appellant under arrest. After the arrest, Patrolman Thek searched the vehicle and found a box of blank checks bearing the name Raquel Robinson of Vancouver, Washington. When Patrolman Thek asked appellant about the checks, he said that Raquel Robinson was his girlfriend and he was taking the checks to her in Cheyenne. Appellant mentioned the checks several times and was upset that Patrolman Thek was seizing the checks.

On July 10, 1990, when Deputy Sheriff Dexter of Laramie County came to transport appellant from Kemmerer to Cheyenne, Patrolman Thek turned the checks over to him. The deputy sheriff took the checks with him to Cheyenne and put them into the evidence locker at the Laramie County Sheriff's Department. On July 15, 1990, appellant contacted Deputy Sheriff Dexter by telephone and again asked about the checks. The deputy sheriff told appellant that if the owner approved, the checks would be returned to him. Appellant told Deputy Sheriff Dexter that his "girlfriend," the purported owner of the checks, had gone to Washington, and he gave the deputy sheriff a telephone number for him to call and verify that he was lawfully in possession of the checks.

The deputy sheriff called the telephone number and spoke with a female who identified herself as Raquel Robinson. The female on the telephone said that the checks belonged to her and that it was okay for appellant to take the checks with him. The deputy sheriff then released the checks to appellant. Deputy Sheriff Dexter later testified that appellant seemed very concerned about the checks.

After appellant was released from jail, his revoked probation from the previous burglary conviction was reinstated. Shortly after his release, appellant decided to get his car fixed because of engine trouble. On July 16, 1990, appellant took his car to a local car dealership for engine repairs.

Appellant's sister Tia DeGraffe first became involved in the case on January 2, 1990, when she opened up a checking account in Vancouver, Washington. An individual named Raquel Robinson, whom both appellant and Tia DeGraffe had met, left some of her identification cards in appellant's car. Tia DeGraffe took the Raquel Robinson identification cards and altered them so that her picture appeared on the identification card next to Raquel Robinson's name. Tia DeGraffe opened the checking account with a one hundred dollar deposit. The account did not stay open longer than two months but Tia DeGraffe continued to write checks on the false checking account even after it was closed. Ms. DeGraffe admitted passing a multitude of checks totaling approximately $22,300

on the false Raquel Robinson account. Later Tia DeGraffe came to Cheyenne, but only brought one book of blank checks with her. When she found out that her brother, the appellant, would also be coming to Cheyenne, she asked him to bring the rest of the blank checks to her.

At appellant's request, Tia DeGraffe joined appellant and a friend of his, Roy, at the car dealership on July 23, 1990. The bill for repair of appellant's car was a total of $2,451.66. The service writer at the dealership testified that the car itself was not worth as much as the engine repair would cost. Ms. DeGraffe had concerns about her brother's scheme even before they went to the dealership. She testified that she told her brother that they were not going to get away with passing a bad Raquel Robinson check for the repair bill. Appellant responded that he thought he could.

Appellant talked to the service writer at the car dealership about the completed repairs. Meanwhile, Tia DeGraffe was in the cashier's office presenting a Raquel Robinson check and showing the false Raquel Robinson identification cards. After placing a telephone call, the car dealership's president told Ms. DeGraffe that they would not accept the check because the account was closed. Ms. DeGraffe said that she would see if she could get cash and bring the money back, at which point the president returned the check to her, along with the yellow copy of the work order on the car repairs.

The service writer saw the woman and other man who came in with appellant enter the cashier's office with the yellow copy of the work order which appellant had given to them. A short time later the man and the woman came out of the cashier's office with the yellow copy of the work order. Since Ms. DeGraffe and appellant's friend had the yellow copy in hand when they came from the cashier's office, the service writer assumed that payment had been made and released the car to appellant, who left with the car.

After appellant picked up his car he went to the assistant district attorney's office to show his receipts for payment of restitution as ordered under his reinstated probation. Next, appellant travelled to Vancouver, Washington. When he arrived in Vancouver, one of his girlfriends gave him a message that the assistant district attorney had telephoned about his probation. Appellant called the assistant district attorney who asked appellant if his car had been repaired at a certain car dealership in Cheyenne. Appellant replied that it had. The assistant district attorney then told appellant that he had to be back in Wyoming within two weeks to correct the situation with the car dealership or a warrant for his arrest would be issued. Appellant was extradited back to Wyoming.

A bench trial was conducted on the theft of services charge. During the trial appellant attempted to call the assistant district attorney as a witness. The trial court denied the request and stated that it would not "entertain the testimony of counsel."

Appellant was found guilty of felony theft of services proscribed by Wyo.Stat. § 6-3-408 and was sentenced to not less than four nor more than five years in prison. Since appellant committed felony theft of services while on probation from a previous burglary, his probation was revoked and appellant was sentenced to not less than two years and not more than three years to be served concurrently with his sentence under the felony theft of services count. Appellant filed timely notice of appeal.

REFUSAL OF DEFENDANT'S REQUEST TO CALL THE ASSISTANT DISTRICT ATTORNEY AS A DEFENSE WITNESS

In *Montez v. State*, 573 P.2d 34, 36 (Wyo. 1977), we recognized that the vast weight of authority indicates that "any decision whether or not to allow an attorney to be called is left to the discretion of the trial judge." Therefore, in reviewing appellant's claims we will only reverse the decision of the trial court if there was an abuse of discretion.

The general rule is that although "an attorney is not disqualified as a competent witness merely because of his participation in a trial, either as prosecutor or counsel for the defense, courts have been extremely reluctant to allow lawyers, including prosecuting attorneys, to be called as witnesses in trials in which they are advocates." *Montez*, 573 P.2d at 36 (citing Erwin S. Barbre, Annotation, *Prosecuting Attorney as a Witness in Criminal Case*, 54 A.L.R.3d 100 (1973)).

Several policy considerations counsel against frequent departure from the general rule that participating prosecutors should not testify. The jury may be confused by the prosecutor's dual role as both an advocate and a witness. *State v. Thompson*, 20 Conn.App. 290, 567 A.2d 837, 840 (1989). Allowing the prosecutor to function in this dual role requires the jury to "segregate the factual testimonial account of the prosecutor-witness from the exhortations of the prosecutor-advocate." The risk of potential juror confusion is "at its height during final argument when the prosecutor must marshall all the evidence, including his own testimony, cast it in a favorable light, and then urge the jury to accept the government's claims." *Thompson*, 567 A.2d at 840.

■ Because of the foregoing policy considerations, the general rule that participating prosecutors should not testify, especially for the state, is well-founded. Therefore, trial courts should allow a prosecutor to testify for the defense only after carefully reasoned consideration of the important policy reasons not to allow a participating prosecutor to testify balanced against the defendant's constitutional rights of confrontation and compulsory process. The practice of prosecutors testifying in criminal cases should be "the exception and not the rule." *Montez*, 573 P.2d at 36 (quoting *Johnson v. State*, 29 Wyo. 121, 138, 211 P. 484, 487 (1922)).

■ To determine whether the defendant should be allowed to depart from the general rule and call the prosecuting attorney, we adopt the "compelling need" standard where the defendant "must demonstrate a compelling need before a participating prosecutor will be permitted to testify." *Thompson*, 567 A.2d at 840 (citing *United States v. Prantil*, 764 F.2d 548 (9th Cir. 1985); *United States v. Dack*, 747 F.2d 1172 (7th Cir.1984); *United States v. Schwartzbaum*, 527 F.2d 249 (2d Cir.1975), *cert. denied*, 424 U.S. 942, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976)). *See Montez*, 573 P.2d at 36. To establish a "compelling need," the defendant must first demonstrate that the testimony is necessary and not merely relevant. The defendant must also show that the testimony of the participating prosecutor would not be cumulative of other testimony or evidence and that he has exhausted other available sources of comparably probative evidence. *Thompson*, 567 A.2d at 840.

■ Examining appellant's contention under the "compelling need" test, we conclude that appellant did not satisfy either portion of the test and, therefore, did not demonstrate that the trial court abused its discretion. Appellant claims that the proposed testimony from the assistant district attorney would demonstrate that he did not have the specific intent to commit felony theft of services. This claim is not tenable even on its face. The proposed testimony would have concerned a telephone conversation with the assistant district attorney on July 24, 1990. Any comments made in this conversation would not be relevant and certainly not necessary evidence of what appellant's intent was when he took the car from the dealership on July 23, 1990. At best this proposed testimony could have only been tangentially related to comments made in the telephone conversation about appellant's probation. Any information relative to appellant's probation could have been testified to by appellant's probation officer and, therefore, appellant's argument fails under the second part of the compelling need test.

■ Appellant contends that he needed to call the assistant district attorney to show that the telephone number given on the work order for repairs at the car dealership was his correct telephone number. However, appellant could have simply in-

troduced the work order into evidence and utilized additional testimony from him or his girlfriend that this indeed was his correct telephone number. Appellant has not demonstrated that he exhausted other available sources of comparably probative evidence as required by the "compelling need" test.

■ Appellant also claims that he wanted to call the assistant district attorney to testify concerning Ms. DeGraffe's plea agreement. This claim, like others appellant advanced on this issue, demonstrates that the assistant district attorney's testimony would have been cumulative only. Ms. DeGraffe had already testified under oath about the terms of her plea agreement, and she had been cross-examined by appellant's counsel on the same subject. The assistant district attorney's testimony on this point, as well as his telephone conversation with appellant relating to his probation, would have been only cumulative. When evidence is merely cumulative, then appellant does not have a compelling need to introduce it. We hold, therefore, that the district court did not abuse its discretion in denying the appellant's request to call the assistant district attorney because appellant did not demonstrate a compelling need for his testimony.

■ In addition to appellant's failure to show a compelling need for the testimony, he failed procedurally by not prudently preserving his claim. For example, a subpoena was never issued for the assistant district attorney. *See* Wyo.R.Crim.P. 20. A subpoena would have made plain that appellant intended to call the assistant district attorney; it may have had the incidental effect of indicating that appellant considered the prosecutor such a crucial witness that it was necessary to subpoena him and ensure his testimony.

When appellant called the prosecutor during the trial the following exchange occurred:

> [DEFENSE COUNSEL]: Well, Your Honor, at this time I would request to call [the assistant district attorney] to the stand concerning his conversations with Mr. Olivas.

> THE COURT: That is denied. The Court will not entertain the testimony of counsel.

> [DEFENSE COUNSEL]: Then at this time the defense would rest.

> THE COURT: Thank you.

No objection to the ruling and no offer of proof followed the denial of appellant's request. This court has frequently stated:

> In the context of evidentiary rulings at trial, this court has long adhered to the doctrine that a sufficient offer of proof is necessary so that this court may be adequately apprised of the nature of the excluded testimony. The dual purpose of this requirement is to enable the trial court to be fully advised in the exercise of its discretion regarding the admission of evidence, and to enable the reviewing court to determine if prejudicial error resulted from the exclusion of the proffered testimony. *Garcia v. State*, 667 P.2d 1148, 1155 (Wyo.1983).

*Krucheck v. State*, 702 P.2d 1267, 1272 (Wyo.1985) (quoting *Jahnke v. State*, 682 P.2d 991, 1005 (Wyo.1984)) (citations omitted).

The lack of an offer of proof not only impacts the district court's ruling, but it also makes the issue more difficult to review. When there is no explicit offer of proof this court must resort to inaccurate speculation about what the testimony would have been. Appellant attempts to explain away this failure to make an offer of proof by arguing that an implicit offer of proof was made during the testimony of Carolyn Baca, appellant's girlfriend. The following transpired during Baca's testimony:

> [DEFENSE COUNSEL]: Now, do you remember receiving a telephone call from the District Attorney * * * in July of 1990?

> A. I did.

> Q. Okay. And do you remember the day that that was received?

> A. About the 24th, 23rd or 24th.

> Q. Of July?

> A. Yes.

Q. And what did [the prosecutor] ask you?

A. He asked me if—

[PROSECUTION]: Excuse me, Your Honor. I guess the State is going to have to object. We have been very tolerant about all of this, but, you know, July 24th, I question relevance when the crime we are here today for is one that was completed on July 23rd. She's now soliciting apparent hearsay testimony, what I allegedly did or didn't say, trying to somehow make me a witness in this case, which I presume Counsel knew was contrary to the rules, but apparently not.

In any event, I question relevancy, number one, as we are talking about a date subsequent. Number two, I question hearsay. I think perhaps an offer of proof is in order so we can all know where Counsel intends to go with this.

[DEFENSE COUNSEL]: Your Honor, it is not hearsay. The State is the opposing party and [the prosecutor] has represented it, a representative of the State. It is, therefore, not hearsay under the rules concerning hearsay 801.

And further, the information concerning that was notified to [the prosecutor] that he would possibly be a witness as to the fact that he made phone calls and he actually spoke with Mr. Rudolph and possibly with Mr. Rudolph's family. He was told this on, I believe it was the 14th day of December, 1990, by myself that he would possibly be a witness and again later that he would be a witness. In that regard, this is not contrary to the rules that he should be a witness. It may be contrary to his ethical code, but he should have known of that beforehand and made arrangements to have somebody else take the case when he knew he would be a witness. He knows what the rules are, the elements—

THE COURT: Let me hear the proffered testimony by way of proof and we'll see whether it is relevant or collateral or how it fits in.

\*     \*     \*     \*     \*     \*

[DEFENSE COUNSEL]: What did [the assistant district attorney] say to you at that time?

A. He had asked me if Kenny was there, and I said, no, he was gone right now.

▮▮▮▮ It is obvious from this record that no explicit offer of proof concerning the assistant district attorney's testimony was ever made. Appellant never had the assistant district attorney testify, in chambers or out of hearing of the jury, to show what the proposed testimony would have proven. This incidental reference to the prosecutor possibly being called in the midst of a hearsay objection is not a sufficient offer of proof. We have held that an offer of proof must be explicit. Assertions and speculation in the appellate brief in no way take the place of an explicit offer of proof at trial. *Montez*, 573 P.2d at 37. *See also Garcia v. State*, 667 P.2d 1148, 1155 (1983).

▮▮▮▮ Appellant's brief suggests there are several proper ways an offer of proof can be made. We suggest there is only one prudent way for an offer of proof to be made at trial. The attorney who seeks to offer evidence, which has been refused or to which an objection has been upheld, should take the initiative. The offer of proof should then take the form of counsel's eliciting the proposed testimony directly from the witness, or entering the tangible evidence in the record, all outside of the hearing of the jury.

Appellant did not make an explicit offer of proof. Even if this procedural defect were not present, appellant did not demonstrate a compelling need to have the assistant district attorney testify.

## DISQUALIFICATION OF ASSISTANT DISTRICT ATTORNEY FROM PROSECUTING THE CASE

▮▮▮▮ Although appellant argues to this court that the prosecutor should have disqualified himself from the case once he knew he was going to be called as a witness, appellant did not move for disqualification below. A motion would have helped the trial court to discover whether the as-

sistant district attorney had been given notice that he would be called as a witness and whether he should have been disqualified. Since no objection or motion for disqualification was made below, we must decide whether the assistant district attorney's continued prosecution of the case constituted plain error. This court has said:

First, the record must be clear as to the incident which is alleged as error. Second, the party claiming that the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, that party must prove that a substantial right has been denied him and as a result he has been materially prejudiced.

*Ramos v. State*, 806 P.2d 822, 827 (Wyo. 1991) (quoting *Bradley v. State*, 635 P.2d 1161, 1164 (Wyo.1981)); Wyo.R.Crim.P. 49(b); Wyo.R.App.P. 7.05.

Appellant fails to show plain error under both the first and second prong of the plain error test. A subpoena of the assistant district attorney would have aided appellant in proving his argument that the prosecutor knew that he was going to be called. Since no subpoena was ever issued to the prosecutor the record does not clearly demonstrate appellant's contention that the prosecutor "knew" that he was going to be called as a defense witness. Thus, the record is not clear as to the incident which is alleged as error; therefore, plain error is not present.

■ Appellant also fails to demonstrate that a clear and unequivocal rule of law was violated. The general rule is that a prosecuting attorney who testifies on behalf of the prosecution should withdraw from the case. *State v. Doran*, 105 N.M. 300, 731 P.2d 1344, 1348 (1986). *See also*, *State v. Reeves*, 234 Neb. 711, 453 N.W.2d 359, 387 (1991). This rule is to prevent the prosecutor "from adding to the weight or

credibility of the evidence by acting as both a witness and an officer of the court." *Doran*, 731 P.2d at 1348. The general rule against prosecutors testifying for the state clearly implicates the policy concerns behind not having the prosecutor act in a confusing dual capacity. The general rule does not apply when the defense calls the prosecutor as a witness. *Reeves*, 453 N.W.2d at 387. When the prosecutor is to testify on behalf of the defense, these policy considerations are not present in a similar degree. Because the ethical problem presents itself in a much more direct fashion when a prosecutor is testifying for the state than when testifying for the defense, courts have said that in order to "disqualify a prosecuting attorney, the defendant has the burden of establishing facts sufficient to persuade the trial court that he probably will be denied a fair trial if the prosecuting attorney is not removed." *Riboni v. District Court for the Tenth Judicial Dist.*, 196 Colo. 272, 586 P.2d 9, 11 (1978). Other courts have held that "a prosecutor should not be required to withdraw because the defense might call him as a witness." *State v. McClellan*, 125 Ariz. 595, 611 P.2d 948, 949 (1980). *See also*, *State v. Fratzke*, 325 N.W.2d 10, 12 (Minn. 1982).

■ Since the danger of jury confusion of roles is not as great when the prosecutor testifies for the defense, we hold that a prosecutor is not required to withdraw because the defense may call him as a witness. Thus, the defendant has the burden of showing that he will be denied a fair trial if the prosecuting attorney is not disqualified.

Appellant argues in essence that as soon as the prosecutor had some inkling, i.e., a loose verbal request, that the defense wanted to call him, he should have, on his own, immediately disqualified himself.[1] This contention is overbroad and not tena-

---

1. Although appellant contends that the prosecutor should have disqualified himself, appellant also concedes in his brief that when the prosecution testifies for the defense there is no conflict of roles. This concession is indeed strange in light of appellant's other arguments. Perhaps appellant is trying to argue that the prosecutor should have disqualified himself before trial began so that the judge would be more inclined to let him testify. We have demonstrated that disqualifying prosecutors on only this basis would allow defendants to remove the prepared prosecutors from their cases.

ble when, as in this case, a subpoena was never issued, no offer of proof was made and no motion to disqualify the prosecutor was made. One court has flatly held that "where the prosecutor was surprised by defendant's attempt to call him as a witness, the prosecutor is not required to withdraw from the case." *People v. Ulecki*, 152 Mich.App. 801, 394 N.W.2d 114, 118 (1986). Indeed, allowing "opposing counsel the unfettered option of removing any prosecutor who has personal knowledge of any material fact [and may be called as a witness] * * * might well result in restricting the prosecution function to the ill-prepared." *Riboni*, 586 P.2d at 11.

As we have previously discussed, it is not clearly demonstrated that the prosecutor's testimony would have been anything more than cumulative. Disqualification of the prosecutor is not necessary when the prosecutor's potential testimony does not pertain to a material issue or is merely cumulative. *People v. Calloway*, 171 A.D.2d 1037, 569 N.Y.S.2d 233, 234 (1991). Thus, appellant is not able to demonstrate that a clear and unequivocal rule of law was violated as required under the plain error test. There was no plain error which prejudiced appellant.

Appellant cites Rule 3.7 of the Wyoming Rules of Professional Conduct for Attorneys at Law. The rule provides:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a *necessary witness* except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9. (emphasis added).

Rule 3.7 recognizes that a lawyer is not disqualified unless he is a *necessary* wit-

ness. In this case appellant did not demonstrate that the assistant district attorney would be a *necessary* witness and, therefore, the assistant district attorney was not required to disqualify himself under the rule.

Appellant cites *Hogervorst v. State*, 90 N.M. 580, 566 P.2d 828 (1977) in his brief. Reliance on this case is misplaced. In *Hogervorst*, the defense subpoenaed the prosecutor and made a motion to disqualify the prosecutor. Neither of those key procedural steps took place here.

Given that the prosecutor did not have clear notice that he was to be called and that the defense was not able to prove he was a necessary witness, there was no need for the prosecutor to disqualify himself from handling the case. Prosecutors should not be disqualified on the basis of vague defense desires that in the end do not demonstrate that the prosecutor is a necessary witness. Appellant suffered no prejudice from the assistant district attorney's continued prosecution of this case.

## CONCLUSION

The trial court's denial of appellant's request to call the assistant district attorney as a witness was prudent and not an abuse of discretion. Appellant's conviction for felony theft of services and the revocation of his previous probation based on that conviction are affirmed.