## STATE OF CONNECTICUT *v.* EDWARD WILLIAMS
### (11096)

O'CONNELL, LANDAU and FREEDMAN, Js.

Argued December 9, 1992—decision released March 23, 1993

*Mark Rademacher,* for the appellant (defendant).

*Leah Hawley,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *John Waddock,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction, after a jury trial, of possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b), conspiracy to possess narcotics with intent to sell in violation of General Statutes §§ 53a-48 and 21a-278 (b), and risk of injury to a child in violation of General Statutes § 53-21. The defendant claims that the trial court (1) improperly admitted hearsay evidence, (2) improperly allowed invocation of the attorney-client privilege, (3) violated the defendant's right to compulsory process and due process, and (4) abused its discretion by excluding evidence that a third party may have committed the crime. We affirm the judgment of the trial court.

The New Haven police, authorized by search warrant, raided premises at 34-36 Legion Avenue in that city. Lissette Gotay, the defendant's girl friend, was in her second floor apartment at 34 Legion Avenue with her six year old son when the warrant was executed. Although the defendant frequently stayed at the apartment, he was not present at that time. The police seized a gram scale, a pager, cash and numerous glassine packets containing cocaine that had been hidden in various locations in the apartment. They also seized the defendant's jacket from a closet and discovered $1300 packaged in groups of $100 in the pocket of the jacket. As a result of the raid, Gotay and the defendant were charged with multiple offenses. Gotay pleaded guilty as part of a plea agreement and, prior to her sentencing, testified for the state at the defendant's trial.

Additional facts are included as necessary in the discussions of the individual claims.

I

The defendant first claims that the trial court improperly admitted a portion of Gotay's testimony. On direct examination, the state asked Gotay, "[w]hen [the police]

discovered these drugs did you tell the officers who the drugs belonged to?" Gotay replied, "Edward Williams." The defendant objected on hearsay grounds. The court overruled the objection and allowed the statement to be admitted as an excited utterance and as a declaration against penal interest.

We do not reach the issue of whether the trial court's ruling was proper. This is a claim of an erroneous evidentiary ruling and as such does not implicate the constitution. In nonconstitutional claims, the defendant has the burden of demonstrating the harmfulness of the claimed error. *State* v. *Robinson,* 213 Conn. 243, 259, 567 A.2d 1173 (1989). He must show that it is more probable than not that the claimed error affected the verdict. Id.

Other evidence that the drugs belonged to the defendant was introduced in this case without objection. In addition to Gotay's testimony concerning her remarks at the time of the raid, she also testified that on the day following the raid the defendant admitted to her that the drugs were his. This testimony came into evidence without objection and was properly before the jury.

It is well established that a judgment need not be reversed merely because inadmissible evidence has been admitted, if permissible evidence to the same effect has also been placed before the jury. *State* v. *Barber,* 173 Conn. 153, 160, 376 A.2d 1108 (1977). Accordingly, the testimony that is the subject of this claim was merely cumulative and cannot be said to have affected the verdict.

## II

The defendant's next claim involves the court's ruling allowing Timothy Pothin, Gotay's attorney, to invoke the attorney-client privilege concerning advice

he had given to Gotay. Pothin represented Gotay on charges arising out of this incident. Gotay was originally charged with possession of narcotics with intent to sell by a person who is not drug-dependent, conspiracy to possess narcotics with intent to sell and risk of injury to a child. She later entered into a plea agreement wherein, in exchange for her guilty plea, the state agreed to drop the risk of injury charge and reduce the possession charge to possession with intent to sell, which, unlike the original charge, does not require a mandatory minimum sentence. Consequently, she pleaded guilty to the conspiracy charge and the reduced possession charge and the state agreed to recommend a sentence of ten years suspended after seven with the right to argue for less.

Gotay's testimony linking the defendant to the narcotics was a significant part of the state's case. Gotay indicated on direct examination that she was not promised leniency in exchange for that testimony. On cross-examination, defense counsel extensively challenged that representation. The trial court, ruling that the cross-examination had opened the door to further testimony concerning the plea agreement, permitted the state to call Pothin. He testified that there were no deals made either on or off the record regarding leniency in exchange for Gotay's testimony. Pothin acknowledged, however, that he was hopeful that Gotay's cooperation would be considered by the judge at the time of sentencing.

On cross-examination, defense counsel asked Pothin whether he had expressed to Gotay his "best judgment as to what type of sentence she could expect at sentencing in light of all the good things you could say including her cooperation in this matter by way of testimony?" Pothin answered in the affirmative and counsel asked, "What was that advice?" Pothin refused to answer and invoked the attorney-client privilege. The

trial court honored Pothin's exercise of the privilege and the defendant now claims that the court's ruling improperly precluded him from fully challenging Gotay's credibility.

Pothin's invocation of the attorney-client privilege implicates the conflict between the candor necessary for effective legal advice and the need for full disclosure in court. *State* v. *Cascone,* 195 Conn. 183, 188, 487 A.2d 186 (1985). In resolving those competing interests, we "employ a fact-specific balancing test." Id., 189. The trial court should honor the privilege if the injury to the attorney-client relationship resulting from disclosure outweighs the benefit to the adjudicative process. Id.

The defendant relies heavily on *State* v. *Cascone,* supra, to support his contention. In *Cascone,* the defendant claimed that an exculpatory statement, allegedly made by a codefendant to an attorney representing both defendants at the time the statement was made, should have been admitted at trial. At the time of trial, the attorney no longer represented either defendant. Our Supreme Court held that the statement should have been admitted because under the facts of that case the "harm of its exclusion outweighed the cost of its admission." Id., 190.

In the present case, however, the balancing test favors the trial court's honoring of the privilege. Unlike the situation in *Cascone,* at the time of trial here, Pothin still represented Gotay, who had not yet been sentenced. An ongoing attorney-client relationship weighs heavily in favor of nondisclosure because of the potential for injury to that relationship. *State* v. *Edwards,* 201 Conn. 125, 141, 513 A.2d 669 (1986). Moreover, the adjudicative process would not have been significantly advanced by disclosure. In *Cascone,* the disclosure went directly to the question of the defendant's

guilt. Here, however, the disclosure concerned only the credibility of Gotay and Pothin, and the defendant cross-examined both witnesses at length on that issue. See *State* v. *Silva,* 201 Conn. 244, 256–57, 513 A.2d 1202 (1986).

The defendant further claims that even if the exercise of the privilege was warranted, Gotay waived it through her testimony and Pothin's testimony as her agent. There is no merit to this claim. "[A]n attorney is not bound to remain silent as to all information regarding his client, but only as to that information born of confidential communication." *State* v. *Manning,* 162 Conn. 112, 121, 291 A.2d 750 (1971). Prior to the question at issue, neither Pothin nor Gotay had testified as to what advice he had given her concerning the type of sentence she would receive. Consequently, the privilege was not waived and Pothin properly invoked it at the point when he was asked to disclose information arising from a confidential communication. Because the privilege was not waived and the balance of interests favors application of the privilege, the trial court properly honored Pothin's exercise of the privilege.

### III

### A

The defendant next claims that the trial court denied his constitutional rights to compulsory process and due process by prohibiting him from calling Judge Thomas J. Corradino and assistant state's attorney John O. Waddock as witnesses. Judge Corradino was not the trial court judge but had participated in pretrial conferences with Pothin and Waddock in Gotay's case. Waddock, however, participated not only in the pretrial conferences in Gotay's case, but was also the state's attorney prosecuting the case against the defendant.

The purpose of calling Judge Corradino and Waddock was to ask them what had been discussed during plea negotiations in Gotay's case and what had been said at a bench conference during Gotay's plea. In an offer of proof, the defendant showed that he hoped to elicit testimony from Judge Corradino and Waddock to the effect that Gotay had been promised leniency in her sentencing if she cooperated with the state by testifying against the defendant. The defendant hoped to use Judge Corradino's and Waddock's testimony to contradict Pothin's and Gotay's testimony that she had not been promised leniency.

"A witness may be impeached by the introduction of contradictory evidence of other witnesses as long as the evidence is in fact contradictory . . . and that evidence does not relate to a collateral matter. . . . A contradiction is not collateral if it is relevant to a material issue in the case apart from its tendency to contradict a witness. . . . Whether extrinsic evidence contradicts testimony of a witness so as to require its introduction into evidence for impeachment purposes is within the trial court's discretion, subject to review only for abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Viet X. Nguyen,* 17 Conn. App. 234, 239–40, 552 A.2d 823 (1989). The evidence that the defendant was seeking to introduce was not relevant to any issue in the case apart from its tendency to contradict Pothin and Gotay and was, therefore, collateral to the issue of the defendant's guilt. The trial court did not abuse its discretion in disallowing this collateral evidence.

### B

Notwithstanding that our collateral evidence analysis is dispositive of this claim, we feel compelled to address special considerations implicated in the attempt to require the testimony of a judge and an assistant

state's attorney. "[T]he calling of judges of the Superior Court as witnesses should be avoided whenever it is reasonably possible to do so. Counsel should never summon them if the rights of their clients can be otherwise protected." *Woodward* v. *Waterbury,* 113 Conn. 457, 465, 155 A.2d 825 (1931). Calling a judge as a witness is not encouraged unless there is a compelling need for his testimony. *Gold* v. *Warden,* 222 Conn. 312, 320, 610 A.2d 1153 (1992). A judge, however, is not automatically disqualified by virtue of his office and is competent to testify concerning facts that he observed at a prior or collateral proceeding. Id. Such examination, however, may not extend into a judge's mental processes in arriving at a judicial decision. Id., 319 n.11. Accordingly, Judge Corradino could not have been examined concerning the factors he would take into consideration in imposing sentence.

The test is whether there is a compelling need for the judge's testimony. The present case can be distinguished from *Gold* v. *Warden,* supra, in which the Supreme Court found that a habeas corpus court abused its discretion in excluding a trial judge's testimony. The issue in *Gold* was the defendant's mental competency during a prior trial. The *Gold* court concluded that the trial judge's location in the courtroom afforded him a unique opportunity to observe the defendant's demeanor during the trial. The court explained that "[i]t stands to reason that the trial judge's prolonged observation of the petitioner's demeanor over the course of the entire trial would be highly significant in assessing the petitioner's competency." Id., 320. The uniqueness of the judge's testimony in *Gold* contrasts sharply with the present case in which the defendant availed himself of the opportunity to cross-examine both Gotay and Pothin extensively concerning the pretrial and bench conferences. There was no showing that Judge Corradino possessed

unique information not otherwise available to the defendant. The defendant failed to satisfy his burden that there was a compelling need to call Judge Corradino as a witness.

## C

The compelling need test also applies to permitting a defendant to call, as a witness, the state's attorney prosecuting the case against him. *State* v. *Thompson*, 20 Conn. App. 290, 296, 567 A.2d 837 (1989). The *Thompson* court identified four policies served by applying the compelling need standard to the prosecutor-witness situation: "First, there is the risk that the prosecutor may not be a fully objective witness. . . . Second, there exists the justifiable fear that, when a prosecutor takes the witness stand, the prestige or prominence of the prosecutor's office will artificially enhance his credibility as a witness. . . . Third, the jury may understandably be confused by the prosecutor's dual role. . . . Finally, a broader concern for public confidence in the administration of justice suggests the maxim that justice must satisfy the appearance of justice." (Citations omitted; internal quotation marks omitted.) Id.

The distinctions between advocate and witness and between argument and testimony will undoubtedly confuse the jury if a defendant is permitted to call his prosecuting attorney as a witness. *United States* v. *Schwartzbaum*, 527 F.2d 249 (2d Cir. 1975), cert. denied, 424 U.S. 942, 96 S. Ct. 1410, 47 L. Ed. 2d 348 (1976). " '[T]he potential for jury confusion is perhaps at its height during final argument when the prosecutor must marshall all the evidence, including his own testimony, cast it in a favorable light, and then urge the jury to accept the government's claims.' " *State* v. *Thompson*, supra, quoting *United States* v. *Prantil*, 764 F.2d 548, 553 (9th Cir. 1985). Requiring a prosecutor

to testify thrusts him into the awkward position of arguing his own credibility to the jury.

The defendant has not satisfied his burden of showing that there was a compelling need for the testimony of the assistant state's attorney prosecuting this case.

## IV

The defendant's final claim is that the trial court improperly excluded evidence he proffered in an attempt to prove that Gotay's brother, Louis, placed the narcotics in Gotay's apartment. The excluded evidence would have shown that Louis was on probation for a narcotics conviction, was living in a halfway house and had recently had a urine analysis that tested positive for narcotics. In addition, Louis had access to a key to Gotay's apartment and was found there the day after the raid. The trial court ruled that the evidence was merely speculative and refused to admit it.

It is axiomatic that "[e]vidence concerning a third party's involvement is not admissible until there is some evidence which *directly connects* that third party with the crime." (Emphasis in original; internal quotation marks omitted.) *State* v. *Payne,* 219 Conn. 93, 117, 591 A.2d 1246 (1991); see also *State* v. *Boles,* 223 Conn. 535, 549–50, 613 A.2d 770 (1992). If the evidence merely suggests a possible grounds of suspicion against another person, it is within the discretion of the trial court to exclude it. *State* v. *Payne,* supra. The trial court here did not abuse its discretion by refusing to admit the proffered evidence of a third party's culpability.

The judgment is affirmed.

In this opinion the other judges concurred.