Kay Lynn HERMRECK, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 96–202.

Supreme Court of Wyoming.

March 24, 1998

Sylvia Lee Hackl, Public Defender; Donna Domonkos, Appellate Counsel; Michael Dinnerstein, Director, Wyoming Defender Aid Program; and Stacey Best and Cathryn Brodie, Student Interns. Argument presented by Ms. Best, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistant Program; and Joseph W. Cole, Student Intern. Argument by Mr. Cole, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

LEHMAN, Justice.

Appellant Kay Lynn Hermreck was convicted of aggravated assault and battery as a result of an accident in which, while driving under the influence of alcohol, she hit a child on a bicycle. On appeal, Hermreck claims that she was denied the right to present her theory of defense, that the court erred in failing to instruct the jury on a lesser-included offense, and that she was deprived of a fair trial because the court allowed the prose-

cution to introduce results of an expert's experiment. We find no error by the trial court; therefore, we affirm.

## ISSUES

Hermreck presents three issues:

1. Did the trial court deny appellant her right to a fair trial when it precluded a defense to an element of the crime?

2. Did the trial court err when it refused to instruct the jury on the statutory lesser offense of assault and battery?

3. Did the trial court deprive appellant of a fair trial by permitting the prosecution to introduce an "experiment" which was materially dissimilar to the actual events at issue?

The State responds:

I. Did the district court properly exclude evidence relating to the effect upon the victim's injuries of his failure to wear a protective helmet?

II. Under the circumstances of this trial, did the district court properly refuse to give lesser included offense instructions requested by the Appellant?

III. Did the district court properly exercise its discretion in admitting the State's expert witness Thomas Alcorn to testify regarding an experiment he conducted?

## FACTS

On June 18, 1995, Rodney Howard, Jr. (Rodney) and his mother were riding their bicycles through a back alley, on their way home. Seven-year-old Rodney was riding ahead of his mother when they arrived at the Duff Street viaduct, across the street from the alley behind their house. Rodney proceeded to ride his bicycle across the street at the same time Hermreck was driving south across the viaduct. Driving a friend's 1978 Ford pickup, she was traveling an estimated 32 to 36 miles per hour in a 30–mile–per–hour zone. Hermreck struck Rodney near the center line, knocking him from his bicycle. Rodney sustained life threatening head injuries and suffered permanent brain damage as a result of the accident.

Officer Greg Way interviewed Hermreck at the scene of the accident. He noticed alcohol on her breath and saw open beer cans in the truck. Hermreck admitted to drinking two or three beers at a softball game at the VFW. Officer Way administered field sobriety tests, which Hermreck failed. Officer Way then took Hermreck to the Cheyenne detention facility where she was twice given a breathalyser test, with results of .123 and .113. A blood sample was also drawn, showing a blood alcohol content of .1366. Hermreck was then released pending further investigation.

On July 13, 1995, Hermreck was charged with one count of aggravated assault and battery and one count of driving while under the influence of alcohol. The information was later amended to exclude the DWUI charge. At a scheduling conference, issues arose regarding Rodney's failure to wear a helmet. The court ordered briefing by the parties and, at a pretrial motions hearing on January 17, 1996, determined that Rodney had no duty to wear a helmet and his failure to wear one was not a defense to the crime charged. The court then ruled that Hermreck would not be permitted to put on evidence as to the effect of Rodney's failure to wear a helmet.[1]

After a four-day trial, the jury found Hermreck guilty of aggravated assault and battery in violation of W.S. 6–2–502(a)(i). Hermreck timely appeals the judgment and sentence entered on the jury verdict.

## DISCUSSION

### Exclusion of Evidence

■ Hermreck argues that the trial court violated her right to a fair trial by preventing her from presenting the theory of her defense. The aggravated assault and battery statute provides, in pertinent part:

(a) A person is guilty of aggravated assault and battery if he:

(i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting ex-

---

1. Hermreck was not precluded from questioning witnesses about whether Rodney was wearing a helmet at the time of the accident. Rodney's mother testified that he was not.

treme indifference to the value of human life[.]

W.S. 6–2–502(a)(i) (1997). Hermreck's theory of defense was that serious bodily injury would not have occurred had Rodney been wearing a helmet. Hermreck did not dispute the fact that Rodney was seriously injured, but she contends that Rodney's failure to wear a helmet caused his injuries to be serious. She asserts the court erred by excluding evidence concerning the effect of Rodney's failure to wear a helmet on the severity of his injuries.

 A trial court's evidentiary rulings, including rulings on evidence offered to support a defendant's theory of the case, will not be disturbed absent a clear abuse of discretion. *Paramo v. State*, 896 P.2d 1342, 1345 (Wyo.1995). In the context of evidentiary rulings at trial, this court has long adhered to the doctrine that a sufficient offer of proof is necessary so that we are adequately apprised of the nature of the excluded testimony. *Rudolph v. State*, 829 P.2d 269, 274 (Wyo.1992); *Garcia v. State*, 667 P.2d 1148, 1155 (Wyo. 1983). This requirement enables the trial court to be fully advised in the exercise of its discretion regarding the admission of evidence and allows the reviewing court to determine if prejudicial error resulted from the exclusion of the proffered testimony. *Rudolph*, 829 P.2d at 274; *Garcia*, 667 P.2d at 1155. Assertions and speculation in an appellate brief in no way take the place of an explicit offer of proof:

> We suggest there is only one prudent way for an offer of proof to be made a trial. The attorney who seeks to offer evidence, which has been refused or to which an objection has been upheld, should take the initiative. The offer of proof should then take the form of counsel's eliciting the proposed testimony directly from the witness, or entering the tangible evidence in the record, all outside of the hearing of the jury.

*Rudolph*, 829 P.2d at 275.

Hermreck made no offer of proof as to what evidence she would present in order to establish that a protective helmet would have prevented Rodney's serious bodily injury. In her pretrial brief Hermreck stated: "Defendant will attempt to have an expert testify that non-use of a helmet is what caused the serious bodily injury." At the January 17 motion hearing, the State questioned whether it would be possible to determine whether the victim's injuries would have been less serious had he been wearing a helmet. Hermreck's counsel stated that he did not have an expert to support that conclusion, but that Milo Beaver, a professional engineer, was a potential expert. The court responded that unless Mr. Beaver was also a medical doctor, he was not competent to testify whether or not a helmet would have made a difference in the injuries Rodney suffered. Hermreck made no other attempt to offer proof, either before or during trial.

The lack of an offer of proof impacts the district court's ruling and severely impedes appellate review. At this point it would be sheer speculation to conclude that Hermreck could have presented a competent witness at trial to testify that Rodney would have suffered less than serious bodily injury had he been wearing a protective helmet. In the absence of a positive showing that such evidence was available, Hermreck cannot claim she was prejudiced by the court's ruling or establish that it amounted to an abuse of discretion.

### Jury Instructions

 Hermreck contends that the court erred when it refused two proffered jury instructions on proximate cause and a lesser-included instruction for the offense of simple battery.[2] The proposed instructions were based on Hermreck's theory that Rodney's serious bodily injury was proximately caused by his failure to wear a helmet at the time of the accident.

 A criminal defendant is entitled to a theory of the defense instruction if it sufficiently informs the jury of the defendant's theory, is supported by competent evidence,

2. W.S. 6–2–501(b) (Rpl.1988) states: "A person is guilty of battery if he unlawfully touches another in a rude, insolent or angry manner or intentionally, knowingly or recklessly causes bodily injury to another."

is not presented by another instruction, and is a defense recognized by statute or common law. *Wilkening v. State*, 922 P.2d 1381, 1383 (Wyo.1996). A lesser-included instruction is required when the offense is "necessarily included" in the offense charged and the evidence presented would support a conviction upon the lesser offense.[3] *Sindelar v. State*, 932 P.2d 730, 732 (Wyo.1997). Both types of instructions depend on the existence of sufficient evidence to support them. *Wilkening*, 922 P.2d at 1383; *Sindelar*, 932 P.2d at 732. Instructions not based on the evidence can be properly refused. *Chavez-Becerra v. State*, 924 P.2d 63, 67 (Wyo.1996).

The record contains no evidence that Rodney would have suffered less than serious bodily injury had he been wearing a protective helmet. Further, as discussed above, Hermreck made no offer of proof, nor did she identify any witness who would testify to that effect. Because there was no evidence to support the proffered instructions, the court did not err when it refused to submit them to the jury.

*Expert's Experiment*

■ Hermreck contends that the district court committed reversible error when it permitted the State's expert, Thomas Alcorn, to testify regarding an experiment he conducted. Mr. Alcorn, an accident reconstruction expert, conducted the experiment to determine how much time it would take a child riding a bicycle to go from a standing start at the side of the road to the place where Hermreck's truck struck Rodney's bicycle. Mr. Alcorn testified that a ten-year-old girl on a 20-inch bicycle made seven timed runs over the distance, and that her time ranged from a minimum of 3.6 seconds to a maximum of 7 seconds, with an average around 5 seconds. Mr. Alcorn used this information to create a chart which demonstrated that if Hermreck had been going the speed limit or if she had applied her brakes, Rodney would have passed in front of her vehicle and not been hit. The chart included a range of estimated crossing times from 3 seconds to 5

seconds. Hermreck contends that the experiment was irrelevant and unfairly prejudicial to her because the actual accident involved a seven-year-old boy on a 16-inch bicycle.

■ The trial court is given broad discretion in its evidentiary rulings, and its decisions will not be overturned absent a clear abuse of discretion. *Candelaria v. State*, 895 P.2d 434, 436 (Wyo.1995). This deference applies to the admission of expert testimony, *Witt v. State*, 892 P.2d 132, 137 (Wyo.1995), as well as experimental evidence, *Gilbert v. Cosco, Inc.*, 989 F.2d 399, 402 (10th Cir.1993); *People v. McCombs*, 629 P.2d 1088, 1090 (Colo.App.1981). Expert testimony is admissible if it will assist the trier of fact. W.R.E. 702. Experimental evidence must satisfy the relevancy standard of W.R.E. 401, and may be excluded under W.R.E. 403 where its helpfulness is substantially outweighed by the dangers of unfair prejudice, delay or confusion. *See* 5 CHRISTOPHER B. MUELLER AND LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 532, at 124 (2nd ed.1994), McCORMICK ON EVIDENCE § 202, at 862 (4th ed.1992).

■ Generally, the conditions under which the experiment was conducted must be the same or substantially similar to those involved in the commission of the crime. *Lampitt v. State*, 34 Wyo. 247, 270, 242 P. 812, 819 (1926); *Love v. State*, 457 P.2d 622, 627 (Alaska 1969). *See also Gilbert*, 989 F.2d at 402. The similarity requirement is relative. The requirement is most strictly applied when the experiment seeks to replicate the event in question to show that things could or could not have happened as alleged. McCORMICK ON EVIDENCE, *supra*, § 202, at 863; *see also Love*, 457 P.2d at 627. Substantial similarity does not require identity of conditions, but only that degree of similarity which will insure that the results of the experiment are probative. *Lampitt*, 34 Wyo. at 269–70, 242 P. at 819; *Love*, 457 P.2d at 627. Minor variations go to the weight of the evidence rather than to its admissibility. *McCombs*, 629 P.2d at 1090. Experiments which demonstrate scientific principles used

---

**3.** Our disposition of the jury instructions issue on the basis of insufficient evidence leaves for another day the question of whether simple battery

is necessarily included in the offense of aggravated assault and battery.

to form an expert opinion do not require strict adherence to the conditions of the actual accident. McCormick on Evidence, *supra*, § 202, at 865–66; *Gilbert,* 989 F.2d at 402.

When Mr. Alcorn began to testify about the experiments he conducted, Hermreck objected; the court excused the jury to determine whether that testimony should be admitted. Mr. Alcorn testified to the court that the purpose of the experiments was to determine how long it took Rodney to get from the side of the road to the point of impact. The court was concerned about the differences between the experimental and actual conditions, and that Mr. Alcorn lacked the expertise to testify as to the effect of the differences. During voir dire, Mr. Alcorn testified that the conclusions he reached about how long it took Rodney to cross to the point of impact could be calculated based on industry standards for acceleration rates for bicycles (.10 to .15 feet per second squared), the estimated distance Rodney traveled from the side of the road to the point of impact (30 feet), and his estimated speed at impact (10 miles per hour). He further testified that the tests he conducted with the ten-year-old girl were to confirm that the numbers he arrived at were within the realm of possibility. Satisfied that the experiment was offered to substantiate Mr. Alcorn's conclusions based on the application of scientific principles regarding acceleration and time-distance analysis, the court allowed him to testify to the jury about his experiment.

The court properly exercised its discretion in allowing Mr. Alcorn to testify about the experiment. The similarity requirement is less strict here because the experiment was used to demonstrate the scientific principles upon which he based his opinion. The differences between the experimental and actual conditions were fully explored for the jury during both direct and cross-examination. Despite the differences, the experiment was helpful to the jury because it translated Mr. Alcorn's calculations into comprehensible reality. The time estimates were relevant to support Mr. Alcorn's ultimate conclusion that Hermreck's speed played a major part in the accident and that she was at fault.

Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice. W.R.E. 403. Before this court will conclude that the trial court admitted unduly prejudicial evidence in violation of W.R.E. 403, the appellant "must demonstrate that the evidence had little or no probative value and that it was extremely inflammatory or introduced for the purpose of inflaming the jury." *DeWitt v. State,* 917 P.2d 1144, 1148 (Wyo.1996). As stated above, the experiment had probative value because it validated Mr. Alcorn's calculations and ultimate conclusions. Hermreck had ample opportunity to attack the credibility of Mr. Alcorn on cross-examination and to point out the flaws in his experiment through the testimony of her own accident reconstruction expert, Milo Beaver. Although Mr. Alcorn and Mr. Beaver differed in their conclusions as to how fast Rodney crossed the road, and thus how much time Hermreck had to react, the differences are attributable in large part to the fact that the two experts used different underlying assumptions. For instance, Mr. Beaver assumed Rodney was traveling at a constant speed, while Mr. Alcorn assumed Rodney was stopped at the side of the road before he crossed. Mr. Beaver assumed that the impact occurred 23 feet from the side of the road, while Mr. Alcorn estimated that Rodney rode 30 feet before he was hit. Mr. Beaver pointed out for the jury the differences in the assumptions used by the two and explained the bases of his assumptions. He also testified that, assuming Rodney stopped before crossing, he would estimate Rodney's crossing time at 3 seconds, a figure encompassed in Mr. Alcorn's chart. Under these circumstances, we fail to see how evidence of Mr. Alcorn's experiment inflamed the jury or was unfairly prejudicial to Hermreck.

### CONCLUSION

Hermreck did not make an offer of proof as to what evidence she would present to support her theory that Rodney would have suffered less serious injuries had he been wearing a helmet. That being the case, we find no abuse of discretion by the district court in ruling that such evidence would not

be permitted. The court properly refused Hermreck's jury instructions on proximate cause and the lesser-included offense of simple battery because they were unsupported by the evidence. Finally, the court properly exercised its discretion when it allowed evidence of the experiment performed by the State's accident reconstruction expert. The judgment and sentence is affirmed in all respects.