**STATE**

v.

**Christopher VOCATURA.**

**No. 2006–66–C.A.**

Supreme Court of Rhode Island.

May 17, 2007.

---

**6.** A maxim of ancient vintage states: *"Qui tacet consentire videtur."* (One who remains silent is deemed to have consented.)

Diane Daigle, Esq., for Plaintiff.

Jeffrey B. Pine, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

On September 30, 2005, a jury convicted the defendant, Christopher Vocatura (defendant or Vocatura), of felony domestic assault for kicking Tammie Frazer in the stomach, causing her serious injuries. The defendant appeals from that conviction and argues that the trial justice committed reversible error when he 1) did not allow the defendant's attorney (counsel or defense counsel) to testify and 2) struck from the record certain portions of the testimony of defense witness Pietro Pastore.

This case came before the Supreme Court for oral argument on February 28, 2007, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we proceed to decide the appeal at this time without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of conviction.

## Facts and Travel

On February 9, 2005, defendant was charged with felony domestic assault for kicking Frazer, his live-in girlfriend, in the stomach causing serious bodily injury—

namely, a lacerated spleen, a lacerated liver, and a collapsed lung. Although the extent of Frazer's injuries never was in dispute, the cause of those injuries and the facts surrounding the incident were hotly contested both before and during trial. The two issues that comprise the substance of this appeal arise from defendant's response to the state's request for discovery.

Before trial, the state propounded a discovery request to defendant. In his response, defendant asserted, among other things, that (1) his attorney of record would testify about a phone call that Frazer allegedly made to his attorney, in which Frazer purportedly admitted that her injuries were caused by a fall down the steps and not by an assault, and (2) Pastore, the couple's roommate at the time of the incident, would testify that he witnessed a confrontation between defendant and Frazer that occurred in the bathroom of their home, but that he observed no physical contact between the two.

The state made a motion *in limine* to exclude counsel's proposed testimony. At the hearing on the motion, the state argued that because counsel was defendant's trial advocate, his testimony was barred by Article V, Rule 3.7 of the Supreme Court Rules of Professional Conduct.[1] The state asserted that admission of defense counsel's testimony would be unfairly prejudicial to the state because it would be tantamount to an attorney, an officer of the court, vouching for his client. Conversely,

---

1. Article V, Rule 3.7 of the Supreme Court Rules of Professional Conduct says:

 "Lawyer as witness. (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
 "(1) the testimony relates to an uncontested issue;

"(2) the testimony relates to the nature and value of legal services rendered in the case; or
"(3) disqualification of the lawyer would work substantial hardship on the client.
"(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9."

defense counsel argued that he be allowed to testify because his testimony was critical to defendant's case. To avoid the prohibition of Rule 3.7, counsel proposed that he engage co-counsel solely for the purpose of examining him with respect to the content of the phone call, once that issue was broached at trial.[2]

Citing Rule 3.7, and his belief that defense counsel was unable to lay a proper foundation authenticating that it was indeed Frazer who made the alleged phone call, the trial justice denied defendant's request and granted the state's motion *in limine*. However, he also said that he would consider further argument on the issue if defense counsel believed that his proposed testimony was required to impeach any of Frazer's contentions after he cross-examined her.

Not surprisingly, at trial Frazer and defendant told markedly different versions of the events occurring on or about December 23, 2004. Frazer testified that at about midnight on December 23 defendant and Pastore returned from a night of drinking. Frazer, who also had been drinking and admitted to being intoxicated when the pair arrived home, immediately confronted defendant and demanded to know where he had been for the last few hours.[3] Ignoring her, defendant entered the bathroom and sat down on the toilet. Frazer followed defendant into the bathroom and lay down on the floor in front of him.

Frazer further testified that while they were in the bathroom, the confrontation between her and defendant began to intensify, and that at one point defendant told her that if she did not leave the bathroom, there would be "big trouble." Not only did Frazer fail to leave, but she also added fuel to the flame by flicking her finger in the area of defendant's genitals in an apparent effort to further aggravate him. Apparently she was successful in doing so, because Frazer testified that in response, defendant stood up from the toilet, grabbed her by the collar, and kicked her in the stomach. Frazer further testified that she knew she was seriously injured because of the extreme level of pain she was experiencing. She said she asked defendant to take her to the hospital but that he refused to do so. The next day, relatives of defendant took Frazer to the Westerly Hospital, where she was treated for her injuries.[4]

During an extensive cross-examination, defense counsel asked Frazer whether she remembered meeting him (defense counsel) in the past, and whether she remem-

2. The defendant's attorney never identified by name any attorney who would serve as co-counsel.

3. Apparently, defendant had promised Frazer that he would take her shopping for a new dress for the holidays.

4. Doctor Vincent Montemarano, Frazer's attending physician, testified at trial about the extent of Frazer's injuries. He said that when he first observed her she seemed "acutely ill," and that she was protecting her abdomen because it had become tender. He also testified that, although she was reluctant to answer questions or provide any information about how she sustained her injuries, as soon as he indicated that that information was necessary to a proper diagnosis, she told him that her boyfriend kicked her in the stomach.

Relying on his initial examination and his understanding of the cause of Frazer's injuries, Dr. Montemarano suspected that Frazer was suffering from intra-abdominal bleeding requiring immediate surgery. Once in surgery, Dr. Montemarano's suspicions were confirmed; Frazer had a substantial amount of blood in her abdomen due to lacerations of her liver and spleen. The doctor also discovered that Frazer had a collapsed lung. According to Dr. Montemarano, Frazer's injuries were consistent with a kick to the stomach.

bered making a phone call to him during the month of January 2005. Frazer answered that although it was possible that they had met in the past, she had no recollection of meeting him. But, she said, she never made any phone calls to him. Thereafter, counsel renewed his request to testify and suggested that the trial justice either (1) allow him to testify about the alleged telephone conversation with Frazer through examination by co-counsel as he previously had suggested so that he could impeach Frazer's testimony that she never called him in January 2005; or (2) declare a mistrial on the basis that, without his testimony, the jury would be deprived of critical evidence. The trial justice denied both requests. He concluded that nothing prejudicial had been presented to the jury that would require a mistrial and that because defendant's counsel could not properly authenticate that the phone call he received was made by Frazer, he would not be allowed to testify about the contents of that phone call at trial.[5]

During the presentation of his case, defense counsel called defendant to the stand. As expected, his story was markedly different from the version recited by Frazer. According to him, he did not go out drinking on the night of December 22. Rather, he said that after working a full day, he went directly home and arrived sometime around 9:15 p.m. Once at home, defendant testified that he went into the bathroom, and that Frazer followed him there. However, not only did he deny assaulting her, he also testified that he had little or no contact with her for the rest of the night, and that the following morning Frazer made no complaints of physical injury.

Defense counsel called Pastore to the stand as well. Pastore testified that during the time that Frazer and defendant were in the bathroom together, he was in the next room playing video games. He said that from his vantage point he could see directly into the bathroom and that he witnessed the events that transpired. Pastore testified that he did not see defendant assault Frazer while they were together, but that he did observe that while defendant was attempting to exit the bathroom Frazer grabbed defendant's leg and that defendant "pull[ed] his leg back to release her hold."

The state objected to Pastore's testimony that he saw Frazer grab defendant's leg. The prosecutor argued that in defendant's pretrial discovery responses, including two amended responses, he asserted that Pastore would testify that he observed *no contact* between Frazer and defendant while in the bathroom. Thus, the

---

5. It should be noted that the trial justice spent considerable time listening to arguments from both the state and the defendant about whether defense counsel's testimony should be excluded under Rule 3.7. Although, it may well be that the trial justice was satisfied that Rule 3.7 precluded counsel from testifying because of his status as the defendant's attorney, the language of the justice's final ruling on the objection dealt solely with authentication:

"THE COURT: The Court will deny the defendant's request for a mistrial. Again, the issue as to whether or not * * * you will offer yourself as a witness, it's not clear to the Court at this time whether you will do so; however, if you do intend to do so, at this point in time, based upon the question and answer to Miss Frazer denying knowledge of you, denying ever speaking to you relative to Mr. Vocatura's matter, this matter, fully accepting your representation that if you were allowed to testify, you would say that you did know her or had an acquaintance with her and that she did make a phone call, this Court would not permit you to testify before the jury because it would be unsatisfied that you had established personal knowledge concerning Miss Frazer, her voice, her voice over the telephone, to permit you to say that, 'Tammie Frazer called me over the telephone.'"

state argued, the testimony that Frazer grabbed defendant's leg, and that defendant then pulled it away, directly contradicted defendant's discovery responses and was a blatant violation of Rule 16 of the Superior Court Rules of Criminal Procedure. The state also argued that this violation was prejudicial to the state, which had rested after presenting its case, in that the testimony suggested a defense— that Frazer's injuries may have occurred accidentally when defendant tried to release his leg from her grasp. The state requested that the challenged portion of the testimony be stricken from the record.

After hearing the arguments of the parties, the trial justice agreed with the state and struck the challenged portion of Pastore's testimony. Significantly, the trial justice did not exclude Pastore as a witness, but instead instructed the jury to ignore only that portion of Pastore's testimony regarding the leg-clutching incident in the bathroom. The defendant was allowed to finish his examination of Pastore and present the rest of his evidence to the jury. Following the justice's ruling, Pastore testified without objection that a short time after the couple's bathroom spat, he heard Frazer fall down a flight of stairs and saw her lying at the bottom of the staircase after the fall.

Ultimately, the jury found defendant guilty of felony domestic assault, and de-

fendant timely appealed. On appeal, defendant argues that the trial justice erred when he excluded defense counsel's proposed testimony and when he struck the challenged portions of Pastore's testimony. The defendant further contends that these errors deprived him of the opportunity to present a full and fair defense and that, therefore, reversal of his conviction is required. We disagree.

## I

## Exclusion of defense counsel as a witness at trial

■ The defendant argues that the trial justice erred when he excluded defense counsel's testimony about the Frazer phone call on the grounds that counsel was unable to lay a proper foundation for that testimony. We agree. At both the motion *in limine* and during trial, defense counsel argued to the trial justice that, if allowed, he would testify that he had a telephone conversation with Frazer shortly after Frazer was injured and that he recognized Frazer's voice from the numerous contacts that he had had with her in the past.[6] In our opinion, according to Rule 901 of the Rhode Island Rules of Evidence [7] and this Court's previous rulings regarding the necessary foundation for voice identification, nothing more was required. *See State v. Marrapese*, 122 R.I. 494, 501–02, 409 A.2d

---

6. The trial justice acknowledged defense counsel's argument in his ruling:

"THE COURT: * * * [F]ully accepting your representation that if you were allowed to testify, you would say that you did know her or had an acquaintance with her and that she did make a phone call, this [c]ourt would not permit you to testify before the jury * * *."

7. Rule 901 of the Rhode Island Rules of Evidence says, in relevant part:

"Requirement of authentication or identification.—

"(a) *General Provision.* The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

"(b) * * *

"(5) *Voice Identification.* Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker."

544, 549 (1979) (holding that prior to the admission of a witness' opinion as to the identity of a speaker, it need only be established that the witness is familiar with the voice of the alleged speaker, and that once a prima facie case of authenticity is made out, the testimony is admissible and the reliability of the identification becomes an issue for the trier of fact).

■ It is well settled, however, that this Court may uphold a trial justice's decision "even though the specific grounds relied upon by the justice were *erroneous*." *State v. Froais*, 653 A.2d 735, 738 (R.I. 1995); *see also State v. Ellis*, 619 A.2d 418, 426 (R.I.1993) (trial justice's decision to allow the defendant's statement into evidence upheld on different facts than those relied upon by the trial justice); *State v. Nordstrom*, 529 A.2d 107, 111 (R.I.1987) ("This [C]ourt on appeal is free to affirm a ruling on grounds other than those stated by the lower-court judge."). This is so even when the trial justice's ruling was, as it was in this case, evidentiary in nature. *See State v. Lynch*, 854 A.2d 1022, 1054 (R.I.2004) ("[W]e can affirm the trial justice's evidentiary ruling on grounds other than the ones actually relied upon to admit this testimony."). Also, we note that prior to rendering his final ruling excluding defense counsel's testimony on foundational grounds, the trial justice also heard extensive argument from the parties about the effect of Rule 3.7 on the admissibility of the testimony.[8] It is on the requirements of that rule that we now focus our attention.

■ On appeal, defendant argues that the admissibility of defense counsel's testimony should be analyzed solely through the prism of the rules of evidence, that Rule 3.7 is merely a disciplinary rule that does not affect an attorney's competence as a witness, and that the rule therefore was not a proper basis for his exclusion. We do not agree.

Although it is true that the issue of whether an attorney may testify at trial generally is governed by the rules of evidence, *see State v. Smith*, 602 A.2d 931, 937 (R.I.1992) ("A court may only scrutinize the competency of a witness testifying at trial and not his or her professional status. * * * [W]e presume that a prosecuting attorney is competent to testify at a trial.");[9] *State v. Caldwell*, 117 Ariz. 464, 573 P.2d 864, 871 (1977) ("As a matter of evidence law, the general rule is that a defense attorney is competent to testify on behalf of his client."), Rule 3.7(a) could not be more specific in its mandate: "[a] lawyer *shall not* act as *advocate* at a trial in which the lawyer is likely to be a necessary witness * * *." (Emphases added.) Thus, the rule (subject to certain enumerated exceptions that are inapplicable in this case) puts the burden on the attorney to decide whether to continue as advocate and forgo testifying, or withdraw as advocate because of the necessary nature of his testimony. When the attorney resolves to remain as an advocate, his testimony, although perhaps admissible under the rules of evidence, nevertheless is precluded by that determination unless and until withdrawal or disqualification is requested and that request is granted by the trial court.

In this case, as his discovery responses naming himself as a witness illustrate, defendant's counsel was aware long before trial of the potential need to present him-

---

8. Indeed, this was the sole ground on which the state's motion *in limine* was based.

9. Significantly, the attorney whose testimony was at issue in *Smith,* though a member of the Attorney General's office, was not trial counsel. *State v. Smith,* 602 A.2d 931, 937 (R.I.1992) ("Ryan is not the attorney of record appearing on the state's behalf * * *.").

self as a witness. In essence, he created the dilemma and then impaled himself on its horns. Assuming he believed that his testimony was critical to his client's case, the onus to withdraw from the case early on—when that withdrawal would have caused minimal, if any, prejudice to his client—rested squarely on his shoulders. Significantly, however, defendant's counsel never requested permission from the trial court to withdraw from the case, and he vigorously objected to the state's efforts to keep him from testifying. In our view, the trial justice was under no obligation to require his withdrawal or to disqualify him absent such a request. *See Caldwell,* 573 P.2d at 871 ("When defense counsel has reason to believe that he will be called as a witness, the burden is upon him to propose the solution of his withdrawing from the case."). In our opinion, therefore, it would have been improper to allow counsel to testify in the same case in which he had chosen to remain an advocate. *See id.* (holding that because the attorney did not offer to withdraw, the trial court was correct in ruling that his testifying would be improper).

## II

### Exclusion of portions of Pastore's testimony

■ The defendant also argues that the trial justice erred when he excluded portions of Pastore's testimony because of Rule 16 discovery violations.[10] It is defendant's position that the trial justice failed to weigh the appropriate factors before he ruled that certain portions of Pastore's testimony would not be allowed. We disagree.

■ In determining the appropriate sanction to apply for a discovery violation, the trial justice and the Supreme Court on appeal take four factors into account: "(1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors." *State v. Coelho,* 454 A.2d 241, 245 (R.I.1982). "We have noted that the sanction of excluding testimony is an extreme and drastic remedy which should be exercised with caution and restraint." *State v. Ramos,* 553 A.2d 1059, 1067 (R.I. 1989). "Nevertheless, we have acknowl-

10. Rule 16 of the Superior Court Rules of Criminal Procedure says, in relevant part:

"(b) *Discovery by the State.* A defendant who seeks any discovery under subdivision (a) of this rule shall permit the State, upon receipt of written request, to inspect or listen to and copy or photograph any of the following items within the possession, custody or control of the defendant or the defendant's attorney:

" * * *

"(5) as to those persons other than the defendant whom the defendant expects to call as witnesses at the trial, all written or recorded verbatim statements, signed or unsigned, of such persons and, if no such statement of a witness is in the possession of the defendant, a summary of the testimony such person is expected to give at the trial.

" * * *

"(h) *Continuing Duty to Disclose.* If, subsequent to compliance with a request for discovery or with an order issued pursuant to this rule, and prior to or during trial, a party discovers additional material previously requested which is subject to discovery or inspection under this rule, he or she shall promptly notify the other party of the existence thereof.

"(i) *Failure to Comply.* If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, it may order such party to provide the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material which or testimony of a witness whose identity or statement were not disclosed, or it may enter such other order as it deems appropriate."

edged that the trial justice is in the best position to fashion a proper remedy for noncompliance with the discovery rule." *Id.* at 1068. "This [C]ourt therefore will overturn a trial justice's ruling only upon a showing of a clear abuse of discretion." *Id.* (citing *State v. Darcy,* 442 A.2d 900 (R.I.1982)).

 Although we caution that, for the purposes of effective appellate review, trial justices should clearly enunciate the *Coelho* factors when determining the appropriate sanction for a discovery violation, the mere failure to precisely delineate the enumerated factors does not, by itself, constitute reversible error. When, as in this case, a trial justice clearly sets forth his reasoning for a particular sanction for a discovery violation even without specifically articulating the *Coelho* factors, and this Court is able to ascertain from that reasoning that, despite his failure to say so, the trial justice did consider the *import* of those factors, we will affirm as long as the sanction did not constitute an abuse of discretion. *See Ramos,* 553 A.2d at 1068.

 The first *Coelho* factor requires the trial justice to consider the reason for the nondisclosure. Our precedent reveals that this factor requires the trial justice to determine whether the nondisclosure was deliberate or inadvertent. *See Ramos,* 553 A.2d at 1068; *State v. Concannon,* 457 A.2d 1350, 1353 (R.I.1983). We have held that when nondisclosure is deliberate, prejudice to the other party may be presumed, *see State v. Morejon,* 603 A.2d 730, 735 (R.I.1992) ("[W]e have held that in situations in which the record indicates a deliberate nondisclosure, a new trial will be granted without inquiring into the degree of harm caused by the misconduct."); *Ramos,* 553 A.2d at 1068 (holding that because there was no evidence of deliberate nondisclosure by the defendant, prejudice to the state would not be presumed);

*State v. Wyche,* 518 A.2d 907, 910 (R.I. 1986) ("When the failure to disclose is deliberate, this court will not concern itself with the degree of harm caused to the defendant by the prosecution's misconduct; we shall simply grant the defendant a new trial."); *State v. Verlaque,* 465 A.2d 207, 214 (R.I.1983) ("Because we conclude that the prosecutor deliberately failed to comply with Rule 16, it is unnecessary to consider whether or not Verlaque suffered procedural prejudice as a result of the noncompliance."), and exclusion of the challenged testimony may be appropriate without considering the other factors. *See State v. Gomes,* 690 A.2d 310, 319 (R.I. 1997) (holding that the exclusion of a defense witness was not excessive as a sanction for deliberate nondisclosure).

Here, although the trial justice did not explicitly accuse defendant of deliberately withholding information, he certainly *considered* the culpability of, and reason for, defendant's nondisclosure and he was not impressed with defendant's representation that the nondisclosure was accidental or that the differences between the discovery responses and proffered testimony was not material.

At trial, defendant essentially argued that his nondisclosure was inadvertent because his reason for not supplementing his discovery as required by Rule 16(h) was that he did not believe that the new information was contradictory. This was so, he contended, because the "no-contact" language of the discovery response was meant to convey only that Pastore would testify that he did not see any contact in the manner alleged by the state and, thus, his testimony with regard to the leg-grabbing incident was not a material departure from the discovery response. The trial justice found this argument unpersuasive. He noted that the defendant's discovery responses unambiguously indicated that

Pastore would testify that he observed "no contact" between defendant and Frazer in the bathroom and not "no contact as alleged by the state." Thus, the trial justice reasoned that Pastore's testimony that he observed Frazer grab defendant's leg directly contradicted those responses.

Further, in response to defense counsel's statement that "[this was] a search for the truth, not to bolster one side or the other[,]" the trial justice replied: "[i]f that's the case, then the search for the truth would have been better served by full disclosure of what this witness was expected to testify to." In our opinion, the trial justice considered the nondisclosure to be knowing and intentional based on the fact that counsel had the information prior to trial and chose not to disclose it in either his discovery responses or any supplement or amendment to those responses, but rather waited to reveal this information until after the state had rested after presenting its case. We cannot say that this determination was clearly erroneous.

■ We previously have held that "the purpose of Rule 16 'is to ferret out procedural, rather than substantive prejudice,' * * * prejudice that would make it difficult for a party to prepare properly for trial." *Gomes,* 690 A.2d at 319 (quoting *Coelho,* 454 A.2d at 245). Here, there can be no question that the defendant had information that contradicted the language of his discovery response, and he did not reveal that information until the state already had presented its case-in-chief. Prejudice may be presumed from the deliberateness of nondisclosure. *See Morejon,* 603 A.2d at 735; *Ramos,* 553 A.2d at 1068; *Wyche,* 518 A.2d at 910; *Verlaque,* 465 A.2d at 214. The trial justice also explicitly noted that the challenged testimony was prejudicial to the state's case in that it suggested a defense—that Frazer's injury occurred as a result of an acci-

dent—for which the state could not have prepared as a result of the discovery violation. Given these considerations, we hold that the trial justice did not abuse his discretion when he excluded the challenged portions of Pastore's testimony.

### III

### Conclusion

For the reasons stated herein, the judgment of conviction is affirmed. The record is remanded to the Superior Court.