DECISION
Before this Court is defendant Jonathan Oster's motion to disqualify Assistant Attorney General William Ferland from acting as lead prosecutor in the State's case against Mr. Oster for soliciting or attempting to solicit a bribe and conspiracy to do the same in violation of R.I. Gen. Laws §§ 11-7-3 and 11-1-6 (1956). Mr. Oster has expressed his intent to call Mr. Ferland as a witness at trial and contends that Mr. Ferland is thus barred from prosecuting the case under the advocate-witness rule. The State opposes defendant's motion, and has also filed a motion in limine to prohibit Mr. Oster from calling Mr. Ferland as a witness at trial. For the reasons stated herein, the Court denies defendant's motion to disqualify, and grants the State's motion in limine to prohibit the defense from calling Mr. Ferland as a witness at trial.
 I Facts and Travel
The Grand Jury returned a four-count indictment against defendant Jonathan Oster, the Town Administrator in Lincoln, Rhode Island, on October 9, 2002. The indictment alleges that Mr. Oster conspired with Lincoln Planning Board member Robert Picerno to solicit bribes in connection with what is known as the H H Screw property in Lincoln. In November 2003, defendants filed a motion to suppress the statements of Mr. Picerno and tangible evidence filed on behalf of Mr. Picerno. The trial court held an evidentiary hearing on these motions. At that *Page 2 
hearing, Mr. Ferland — having worked with then Assistant Attorney General Stephen Dambruch to investigate the case and obtain Mr. Picerno's cooperation with the State in its case against defendant Oster — was called as a witness for the State. Mr. Dambruch examined the State's witnesses, including Mr. Ferland and then Major Brendan Doherty. Mr. Dambruch, along with Assistant Attorney General Alan Goulart, was the counsel of record for the State at that time. Mr. Dambruch subsequently left the Attorney General's Office to join the U.S. Attorney's Office, and Assistant Attorney General Bethany Macktaz joined the prosecution team.
In January 2004, the Court issued a decision denying defendant's motion to suppress. Defendant then filed a motion to suppress certain wiretap evidence. In March 2004, prior to decision on that motion, Mr. Picerno pled nolo contendere and was sentenced to eight years, with three years to serve at the ACI and the balance of five years suspended with five years probation. The trial court then issued a written decision granting the motion to suppress certain wiretap evidence in July 2004. The State appealed this decision to the Rhode Island Supreme Court, which affirmed in part and reversed in part. The file was returned to the Superior Court in June 2007. At that time, the State informed the Court that Mr. Ferland would be acting as lead counsel, with Ms. Macktaz assisting, and requested a continuance, which was uncontested. The trial is currently scheduled to begin on a datecertain of January 9, 2008.[1]
On September 24, 2007, the defense sent a letter to the State asking how it would address the conflict regarding Mr. Ferland's role as prosecutor and witness. The letter stated: "[a]t the suppression hearing, Bill [Mr. Ferland] was called to present very persuasive testimony *Page 3 
regarding Mr. Picerno's motives and his astonishing lack of credibility. The same evidence will be material and relevant at trial. We plan to call Bill as a witness." On October, 11, 2007, the State filed a motion in limine requesting the Court to prohibit the defense from calling Mr. Ferland as a witness. The Court heard argument on that motion on November 2, 2007. During the hearing, the Court inquired as to whether the defense was moving to disqualify Mr. Ferland. Defense counsel, after first declining to so, verbally moved for disqualification.
At a hearing on November 9, 2007, the trial court amended the record to include the Supplemental Answer to Defendant's Motion for Discovery filed by the State, which affirmatively states that Mr. Ferland will not be called as a witness by the State in this case, and the affidavit of Mr. Ferland summarizing the events of his meeting with Mr. Picerno on February 15, 2002. These materials were marked as exhibits by the trial court, as were the transcript of Mr. Ferland's testimony at the suppression hearing in November 2003, the testimony of then Major (now Colonel) Brendan Doherty during that period of time, Mr. Picerno's testimony during that period of time, and a memorandum from then Assistant Attorney General (now Assistant U.S. Attorney) Stephen Dambruch regarding his February 15, 2002 meeting with Mr. Picerno. The Court also requested that counsel submit answers to questions regarding the impact of additional case law that the Court had unearthed on disqualification of the prosecutor and related issues.
On November 13, 2007, after consideration of the issues and the interplay between the trial justice's role as a trier of fact in the pretrial suppression hearing and the issue of disqualification with respect to Mr. Ferland, the trial court rendered an order withdrawing from this case. The Court vacated the previous order requesting written answers from counsel as well as any previous rulings made relative to the State's motion in limine to prohibit the defense from calling *Page 4 
Mr. Ferland as a witness and the defendant's motion to disqualify Mr. Ferland, so that the issues could be taken up anew.
On November 20, 2007, the parties submitted materials to this Court in light of a new trial justice assignment. Defendant Oster contends that Mr. Picerno's cooperation with the State following his own arrest makes him a key witness for the State in the trial against Mr. Oster. He argues that the State intends to call Mr. Picerno to make its case and to explain an otherwise ambiguous recorded conversation between himself and Mr. Picerno on the day of his arrest. Mr. Oster plans to mount a defense that attacks Mr. Picerno's credibility and motives for implicating Mr. Oster. Defendant posits that Mr. Ferland will be necessary to this defense. Defendant notes that it was the State that initially named Mr. Ferland as a witness against Mr. Picerno's credibility in pretrial matters, and that it therefore created the dilemma: the State was aware that Mr. Ferland could potentially be a necessary witness at trial long before it named him as the lead prosecutor in the case. Defendant asserts that its motion is made in good faith, as he fully intends to call Mr. Ferland as a witness. Even if Mr. Oster does not call Mr. Ferland to testify, he argues that Mr. Ferland's deep involvement with making Mr. Picerno a witness for the State would raise issues of vouching for the legitimacy of the State's actions and would therefore raise constitutional concerns.
The State concurs that it would violate the advocate-witness rule for Mr. Ferland to act as both prosecutor and a witness for the defense. However, the State opposes the defendant's motion to disqualify, and counters with a motion in limine to prohibit the defendant from calling Mr. Ferland as a witness. The State posits that defendant's motion is merely a tactical ploy intended to control the prosecution of this case. The State comments that there is some irony to the procedural dilemma: the State suggests it was forced to list Mr. Ferland as a witness in Mr. *Page 5 
Picerno's suppression hearing because Mr. Picerno's attorney was attempting to remove Mr. Dambruch as the prosecuting attorney and call him as witness for that hearing. The State further contends that Mr. Ferland's testimony to impeach Mr. Picerno would be collateral and cumulative. According to the State, Mr. Ferland was present for two brief meetings with Mr. Picerno, one at which then Major Doherty was also present, and another at which Mr. Dambruch was present. As both now Colonel Doherty and Mr. Dambruch are available to testify, the State contends that Mr. Ferland's testimony will be unnecessary at trial and the defendant has therefore failed to meet the "compelling need" test for disqualification of a prosecutor. Finally, the State argues that prosecutors in every case are involved with criminal investigation and that this fact does not make the prosecutor's involvement at trial unfair for the defendant. If it were the case, the State avers, that the prosecutor could be disqualified for this pretrial involvement, the result would be undue delay in the criminal process.
 II Legal Standard
Rhode Island has long held that an attorney offering testimony as a witness may be scrutinized for competency and not for his or her professional status. State v. Smith, 602 A.2d 931, 937 (R.I. 1992). However, the attorney is limited when acting as both counsel and witness in a case. Id. Since the Rhode Island Supreme Court's decision inJudge v. Janicki, Rhode Island has adhered to the standard established in Rule 3.7 of the Rhode Island Rules of Professional Conduct.118 R.I. 378, 374 A.2d 547 (1977). The rule states:
 Rule 3.7 Lawyer as Witness. —
 (a) a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
 (1) the testimony relates to an uncontested issue; *Page 6 
the testimony relates to the nature and value of legal services rendered in the case; or
 (3) disqualification of the lawyer would work substantial hardship on the client
 (b) a lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 [Conflict of Interest: General Rule] or 1.9 [Conflict of Interest: Former Client].
Many states have adopted a similar rule and ground its rationale in policy considerations.
See e.g. Rudolf v. State, 829 P.2d 269, 272-273 (Wyo. 1992) (finding that it is within the discretion of the trial court to decide whether to allow a prosecutor to testify, but this decision should be made only after careful consideration of the policy issues at play). The Third Circuit Court in U.S. v. Birdman described the policy reasons for the advocate-witness rule: 1) the rule eliminates the risk that a testifying prosecutor will not be a fully objective witness; 2) there is a fear that the prestige or prominence of a government prosecutor's office will artificially enhance his credibility as a witness; 3) the dual role of the prosecutor might create confusion on the part of the trier of fact as to whether the prosecutor is speaking in the capacity of an advocate or witness, thus raising the possibility of the jury giving testimonial credit to the closing argument; and 4) the rule reflects a broader concern for public confidence in the administration of justice and the appearance of justice. See U.S. v. Birdman, 602 F.2d 547, 553-555
(3rd Cir. 1979). Because of these considerations, "the roles of advocate and witness are fundamentally incompatible." U.S. v.Gomez, 584 F. Supp. 1185, 1188 (D. R.I. 1984) (quoting J.D.Pflaumer, Inc. v. U.S. Dep't of Justice, 465 F. Supp. 746, 748 (E.D. Pa. 1979)).
A. General Application of the Advocate-Witness Rule
The Rhode Island Supreme Court has taken a strict approach to applying the advocate-witness rule in a situation where a party plans to call its own counsel to testify on its behalf. The Court addressed the issue inState v. Smith, 602 A.2d 931, 937 (R.I. 1992). There, the defendant, *Page 7 
appealing a conviction of two counts of First Degree Murder, argued,inter alia, that the trial justice erred in permitting a member of the Attorney General's Office to testify on behalf of the State.Id. at 934. The defendant had argued at trial that he had been forced by police into confessing to the homicides. Id. The State called Assistant Attorney General James Ryan to testify as to the interview between the police and the defendant. Id. On appeal, the Supreme Court found that because the prosecutor testifying was not the attorney appearing on the State's behalf, the advocate-witness rule did not apply. Id. at 937. Importantly, the Court commented that "if that were the situation [if the prosecutor were the attorney of record for the State], the rules would clearly forbid Ryan [the prosecutor] from trying the case at bar."Id. Therefore, our Supreme Court has made clear that a prosecutor cannot try a case and be a witness for the State.
The Court further analyzed the language of Rule 3.7 of the Rules of Professional Conduct in State v. Vocatura, 922 A.2d 110 (R.I. 2007). There, the Court stated that the Rule "could not be more specific in its mandate: `[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness.'" Id. (emphasis as it appears in text). In Vocatura, the defendant appealed a conviction of felony domestic assault, contending that the trial justice erred by not allowing his defense counsel to testify on his behalf. Id. at 114. Defense counsel had a telephone conversation with the victim regarding the alleged assault, and defendant sought to impeach the victim at trial with the testimony of his counsel. Id. The Supreme Court affirmed the trial justice's decision to preclude defense counsel from testifying. The Court interpreted Rule 3.7 as placing the initial burden on the attorney to decide whether to continue as advocate and forgo testifying, or testify and withdraw as advocate. Id. at 116. When an attorney decides to continue in one of the roles, he cannot perform the other.Id. at 117. In Vocatura, the Court *Page 8 
found that "counsel was aware long before trial of the potential need to present himself as a witness. In essence, he created the dilemma and then impaled himself on its horns." Id.
What can be gleaned from these cases is that an attorney cannot testify on behalf of his or her own client in a situation where the attorney had the choice to withdraw prior to trial.
B. Application of Rule Where the Defendant Intends to Call theProsecutor to Testify
When a defendant moves to disqualify the prosecutor in order to call him or her as a witness at trial, the balance of interests at play under the advocate-witness rule shift. On the one hand, the defendant's constitutional rights under the confrontation and compulsory clauses of the Sixth Amendment become a significant factor. See U.S. v.Prantil, 764 F.2d 548, 552 (9th Cir. 1985). However, some states have found that the advocate-witness rule is intended to prevent the prosecutor from adding to the weight and credibility of his or her own case by testifying on behalf of the state, and such concerns do not exist where the prosecutor is called by the defense. SeeRudolf, 829 P.2d at 276. The Ninth Circuit has also commented on the balance of interests called for by the advocate-witness rule under these circumstances, stating: "[w]hen the proposed testimony is offered in support of the client's own case-in-chief, the rule simply forces the attorney to weigh whether his testimony or his advocacy is more valuable to his client's interests. When, however, the proposed testimony is germane to his adversary's case, the balance of interest is no longer in equilibrium." Prantil, 764 F.2d at 554. Courts generally disfavor allowing a prosecutor to testify at a criminal trial, and although the bar is not absolute, federal courts have found that possibility for abuse requires that "the defendant demonstrate a `compelling need' before a participating prosecutor will be permitted to testify."Id. See also U.S. v. Schwartzbaum, 527 F.2d 249, 253 (2nd
Cir. 1975) (requiring that the defendant show a compelling and legitimate need to call the prosecutor as a witness). *Page 9 
Although the Rhode Island Supreme Court has not directly applied the "compelling need" test, many states have used this federal test for instruction where a defendant wishes to call a prosecutor to testify at trial. See State of Connecticut v. Thompson, 567 A.2d 837, 839
(Conn.App. 1989) (stating "[t]he courts in this state have not previously had the opportunity to consider the standard to be applied where, as here, a criminal defendant seeks testimony from the prosecuting attorney"). When Connecticut first addressed this issue, it found that the "compelling need test" that emerges from the federal case law is consistent with the advocate-witness rule. Id. at 840. As other courts have read the two rules together, it appears that standard is in fact consistent with the "necessary witness" language. The Wyoming Supreme Court has found that: "[t]o establish a `compelling need,' the defendant must first demonstrate that the testimony is necessary and not merely relevant."Rudolf v. State of Wyoming, 829 P.2d 269, 273 (Wyo. 1992) (adopting the compelling need standard for a defendant seeking to call a prosecutor as a witness at trial, and finding that it was not met where a defendant sought to have the prosecutor testify as to a telephone conversation with defendant regarding probation — an issue for which his probation officer would be a competent witness). Therefore, cases applying the "compelling need" standard are instructive in Rhode Island, as the standard incorporates and reflects the "necessary witness" standard that Rhode Island has applied to date.
The Rhode Island Supreme Court has decided only one case where the defendant moved to disqualify the prosecutor and call him as a witness at trial, and there the Court considered whether the prosecutor was truly a necessary witness. State v. Usenia, 599 A.2d 1026, 1030 (R.I. 1991). In State v. Usenia, the defendant sought to establish that he was not initially identified by the victim of an armed robbery.Id. at 1030. The defendant claimed that the prosecutor's notes from the identification meeting revealed that the defendant had not been *Page 10 
initially identified as the perpetrator, and that the prosecutor's testimony about the witness' uncertainty was paramount to his defense.Id. The Court found that the argument was without merit, as the notes were protected as the attorney's work product and the identification had taken place in the presence of a police officer who was available to testify. Id. The prosecutor was, therefore, clearly not a "necessary witness." Id. at 1030-1031. Although the procedural posture ofUsenia differs somewhat from the case at hand, it offers instruction in determining whether the prosecutor is a necessary witness at trial: an advocate is not a necessary where the opposition intends to call him or her to testify as to events that were also witnessed by an available, non-advocate witness.
C. Special Considerations
Rhode Island has not yet had occasion to address a situation where the defendant intends to call a prosecutor who is the counsel of record for the State and who has testified at a pretrial hearing. However, this Court is persuaded that in the instant case, the burden on the defendant to show that the prosecutor is a necessary witness remains the same despite Mr. Ferland's pretrial activity. This Court is mindful that a careful balancing of interests is necessary to determine whether a prosecutor should be disqualified, particularly in a situation where the prosecutor in question has provided testimony at pretrial hearings or has been integrally involved in the criminal investigation.See e.g. People v. Arabadjis, 93 Misc. 2d 826, 830 (N.Y. 1978) (finding that where a prosecutor had provided testimony at a pretrial hearing, the defendant need only show that there exists some likelihood that the prosecutor will be called to testify at trial, and that the testimony will be relevant — tending to establish the contention of the side for whom it is being offered — to disqualify that prosecutor); Herrod v.State, 2007 Ark. LEXIS 483 *9-10 (Ark. 2007) (holding that "when a prosecutor undertakes an active role in the investigation of a crime *Page 11 
to the extent that he becomes potentially a material witness for either the state or the defense he can no longer serve as an advocate for the state in that case," but noting that the Court must be mindful of a potential ploy on the part of defense counsel to remove the prosecutor).
The Seventh Circuit addressed this issue in U.S. v. Johnston, and offered commentary on how to evaluate this unusual situation.690 F.2d 638 (7th Cir. 1982). In U.S. v. Johnston, the Seventh Circuit reviewed, en banc, the decision of the U.S. District Court for the Northern District of Illinois which refused to permit an Assistant United States Attorney assigned to the case to testify in a pretrial suppression hearing. Id. at 639.[2] On appeal, the Seventh Circuit noted that this was the first case in which the issue of the advocate-witness rule had "arisen in a pretrial suppression hearing and the witness prosecutor intended to participate in the subsequent trial."Id. at 643-644. The Court found that "[w]hat emerges in general from the cases is that it is a situation to be avoided if possible, but counsel's testimony will be permitted in extraordinary circumstances and for compelling reasons, usually where the evidence is not otherwise available. In those circumstances, it is often suggested, however, that counsel withdraw from further participation in the case." Id. at 644. The Court remanded the decision of whether to allow the prosecutor to testify at the pretrial hearing. Id. at 646.
The Court then discussed how the lower court might address the issue of allowing the prosecutor to continue to serve as counsel at trial if he or she had been permitted to testify at a pretrial suppression hearing. Id. The Seventh Circuit recommended that the lower court apply a *Page 12 
balancing test: "[p]ossible prejudice to the government's case as well as the defendant should be considered and balanced by the trial judge in the context of particular circumstances. As a general rule, the government prosecutor is not to be automatically disqualified as a witness or as a trial advocate after testifying at a pretrial suppression hearing, but testifying and continuation as counsel shall be the subject to the sound discretion of the trial judge." Id. at 646. The Court acknowledged that if the trial court permits the prosecutor to testify, the government then has the "undesirable options of either not offering the testimony o[r] substituting prosecutors. It is noted that substitution would often disqualify the prosecutor most familiar with the case. . . . we are not imposing substitution as a per se mandatory requirement. . . . Substitution, however, is ordinarily preferred."Id. at 645.
In addition to providing instruction to the trial court for a situation in which a prosecutor testified at a pretrial suppression hearing and planned to continue as counsel in the case, the Seventh Circuit also offered its conjecture on how such a situation would play out if the prosecutor might later be called as a witness at trial. The Court noted that if the matter for which the prosecutor's testimony at the pretrial suppression hearing "unexpectedly arises for any reason during the jury trial of the defendant prompting Hosteny, if he remains in the case, to leave the counsel table for the witness chair, then a much more serious problem arises which we need not reach at this time. The government, however, if there is any likelihood of that possibility, should plan accordingly in keeping with the general principles discussed in this opinion." Id. at 645 n. 14. The Court, by including this note, offered a gloss to the general "compelling interest" rule. While there is no absolute rule requiring the prosecutor to withdraw in a situation where he or she has testified at a pretrial hearing, this note suggests that when *Page 13 
there is any likelihood that the prosecutor will be called to testify at trial, counsel should prepare accordingly, considering the balance of interests at play.
Considering this case law, the Court must take into account the unusual circumstances in this case: Mr. Ferland has testified at a pretrial suppression hearing, and the defense contends that he was inextricably involved with securing Mr. Picerno's cooperation against Mr. Oster. This case does differ, however, from other cases where pretrial matters contribute to the issue of disqualification. Here, Mr. Ferland's involvement in pretrial hearings and investigation were with respect to Mr. Picerno. Were Mr. Picerno on trial in the case at hand, the analogy between this case and those in other jurisdictions would be much stronger. The posture of this case is such that it is Mr. Oster, and not Mr. Picerno, who seeks to disqualify the prosecutor because of the potential need for his testimony at trial. The Court must consider that the defendant's interests in calling Mr. Ferland to testify about conversations with Mr. Picerno are not as central to the defendant's confrontation rights, and that the caution with which other courts have addressed the issue of disqualification where the prosecutor was involved in pretrial matters may not be to the same extent here. Therefore, while mindful of the careful balancing test required for a case where the defendant intends to call as a witness a prosecutor who has provided pretrial testimony and opts to continue as counsel in the case, the Court is nonetheless persuaded that the defendant must show a "compelling need" in the unique set of circumstances presented by Mr. Oster's case.
 III Analysis Under the "Compelling Need" Test
In considering whether the defendant has met his burden under the "compelling need" test, the Court will consider several factors: the necessity of the prosecutor's testimony, the materiality of the issue for which the testimony is being offered, the danger of allowing a *Page 14 
prosecutor to vouch for the actions of the State, the potential hardship to the State and the avoidance of undue delay.
A. Necessity
Many of the cases analyzing the advocate-witness rule under the "compelling need" standard find that the defendant's burden is not met where other avenues exist for obtaining the same evidence. Seee.g. Usenia, 599 A.2d at 1030; Rudolf, 829 P.2d at 273; U.S. v.Reid, 2006 WL 1751789, *4. In the instant case, the State argues that the testimonies of then Major Doherty and Mr. Dambruch are sufficient to supply any information that might be obtained from Mr. Ferland's testimony at trial. Mr. Ferland himself testified at the pretrial suppression hearing that he had two conversations with Mr. Picerno, one in the presence of Mr. Dambruch, the other with then Major Doherty.Ferland's Testimony at 90. The issues for which the defense expects to call Mr. Ferland to testify are the conditions under which Mr. Picerno agreed to cooperate with the State, including the circumstances surrounding his search for counsel during the investigation; the fact that he sought a firm and self-serving deal from the prosecution; and the fact that Mr. Picerno's testimony shows marked inconsistencies with respect to these events. See Transcript from November 2, 2007 at 32-33. The defense also seeks Mr. Ferland's testimony as to Mr. Picerno's attitude, behavior, and responses to police questions; how they discussed the relative merits of defense counsel; and Mr. Ferland's impression of these events as he was present in the building for most of the period of questioning. Id. at 12-13. Mr. Ferland, Mr. Dambruch, and Colonel Doherty's testimonies are consistent with respect to these issues, and suggest that Mr. Ferland conducted the conversations regarding Mr. Picerno's counsel as well as any deal he might make with the government while in the company of either then Major Doherty or Mr. Dambruch. *Page 15 
Defendant Oster's concern is that the events of the interrogation, as they are described by Mr. Ferland and Mr. Picerno, do not foreclose the possibility that Mr. Ferland met alone with Mr. Picerno, or that such an opportunity existed. From his own testimony, Mr. Ferland notes that he drove to the barracks alone, Ferland's Testimony at 79, and that he was unsure whether he was the only one from his office to receive the initial call to come to the barracks. Id. at 45. Mr. Picerno testified that he requested to speak with a prosecutor regarding the possibility of plea bargaining. Picerno's Testimony at 41. It is not clear from his testimony whether he spoke to Mr. Ferland alone about the deal he would obtain for cooperating. Id. at 43. Mr. Picerno's testimony from the pretrial suppression hearing does show marked inconsistencies. Although he states that he had two meetings with Mr. Ferland about the possibility of his cooperating, one with Mr. Dambruch present, another with then Major Doherty present, id. at 124, when questioned by Mr. Dambruch about the details of these meetings, Mr. Picerno stated, "I'm not sure if it [the meeting] was the three of us [Mr. Picerno, Mr. Dambruch, and Mr. Ferland] or just him [Mr. Ferland] and I."Id. at 125. When questioned on this point, and asked directly whether there was a private meeting with Mr. Ferland, Mr. Picerno responded, "I am not sure of that. I really don't know." Id. at 125. While this testimony indicates the possibility that Mr. Picerno will testify at trial that he met alone with Mr. Ferland, the Court is not persuaded that this risk is considerable or unavoidable. There exists available testimony from Mr. Dambruch and Colonel Doherty that would contradict any such assertion by Mr. Picerno. Furthermore, the State has offered to stipulate that such testimony, if offered by Mr. Picerno at trial, is a lie.[3] Where the *Page 16 
government has offered to stipulate as to the facts the defendant would need the prosecutor's testimony to prove, the necessity of calling the prosecutor to testify at trial is significantly reduced. See U.S. v.Diozzi, 807 F.2d 10, 13-14 (1st Cir. 1986) (finding that where the State sought to disqualify the defense counsel to call him as a witness, counsel's testimony was not necessary if the parties agreed to a stipulation of the relevant facts for which the testimony would be offered).
In addition to considering whether substitute testimony exists, the Court must also consider the adequacy of such testimony. See U.S. v.Prantil, 764 F.2d at 551-552. In U.S. v. Prantil, the defendant moved pretrial to have the prosecutor recused so that the defendant could call him as a witness at trial. Id. at 550. In determining whether such disqualification should have been granted, the Court stated:
 We recognize that a defendant has an obligation to exhaust other available sources of evidence before a court should sustain defendant's efforts to call a participating prosecutor as a witness. Nonetheless, the defendant's obligation to resort to alternative means of adducing the factual testimony is not absolute. Both the quality and quantity of the alternate sources of evidence are proper subjects for comparison with that sought directly from the participating prosecutor. Id. at 551-552.
There, the defendant could use the testimony of an FBI agent, but the agent was present for only some, not all, of the relevant discussions.Id. The Court determined this to be insufficient, and one of several factors that the district court should have considered. Id. at 552. In the present case, Mr. Oster contends that the testimonies of then Major Doherty and Mr. Dambruch are not of the same "quality and quantity" as Mr. Ferland's, as neither was present for both of the conversations with Mr. Picerno in question, and the pretrial testimony of then Major Doherty and the brief one-page memorandum provided by Mr. Dambruch, pale in comparison to the significant 80-page transcript of Mr. Ferland's pretrial testimony. While the Court acknowledges *Page 17 
that this argument carries weight, it must consider this in connection with other factors. Furthermore, the Court is cautious to find that the testimony of Mr. Ferland, while offering a longer pretrial transcript and perhaps better continuity than the testimonies of Mr. Dambruch and then Major Doherty, is truly of a better quality. The trial testimonies of now Colonel Doherty, and now Assistant U.S. Attorney Dambruch should give ample opportunity to Mr. Oster if he wishes to contradict his once co-defendant Mr. Picerno.
B. Materiality
In addition to considering whether there exists other adequate evidence to substitute for the prosecutor's testimony, the Court will also consider whether the defense intends to offer the testimony as evidence for a material issue.[4] See State of Connecticut v.Thompson, 567 A.2d 837, 840 (Conn.App. 1989); People v. Paperno,429 N.E.2d 797, 798 (Ct.App.N.Y. 1981). The case law indicates that the defendant must show that there is a "significant possibility" that the issue for which he or she wishes to use prosecutor's testimony "will be a material issue in the case." Paperno, 429 N.E. 2d at 801.
In one New York case, the defendant sought to call the prosecutor to testify as to matters that arose when the prosecutor questioned the defendant before the Grand Jury. Paperno, 429 N.E. 2d at 798. There, the Court of Appeals found, "where the defendant, prior to trial, makes a significant showing that the prosecutor's prior investigative or prosecutorial conduct will be a material issue at the trial, the prosecutor should be recused." Id. The prosecutor's pretrial activity, therefore, may be a material issue. See id.
However, although defendant Oster would call Mr. Ferland to testify as to pretrial matters, the issue for which defendant Oster seeks Mr. Ferland's testimony does not center on his *Page 18 
own conduct, but rather on discrediting Mr. Picerno's testimony as to those pretrial events. Connecticut courts have determined that using the "prosecutor's testimony for impeachment purposes is not vital to the defense." Thompson, 567 A.2d at 840 The Thompson Court distinguished impeachment use from cases where the prosecutor's testimony would be helpful as to factual events at issue. Id. Defendant Thompson in that case sought to call the prosecutor to testify as to the time of another defendant's arrest, and to use the testimony to impeach the credibility of a police officer testifying against Thompson. Because the other defendant was available to testify as to this arguably minor issue, the court found that Thompson had not demonstrated that the testimony was necessary, or that he had "exhausted other available sources of comparably probative evidence." Id. at 840. Here, although defendant Oster contends that impeaching Mr. Picerno is vital to his case, it is nonetheless impeachment testimony. The issue of materiality is also closely tied to the issue of necessity; as Mr. Oster has alternate evidence that would impeach Mr. Picerno, Mr. Ferland's testimony for this purpose appears less material. The defendant avers that in addition to the use of Mr. Ferland's testimony for impeachment purposes, the defendant will call Mr. Ferland to testify as to Mr. Picerno's attitude and mind set, which would tend to show his motive for cooperating with the State. Defense counsel at oral argument suggested that were Mr. Picerno unavailable to testify at trial, Mr. Ferland's testimony regarding these issues would still be admissible; a fact that indicates that the evidence is substantial. Without diminishing the potentially collateral issue of an alleged co-conspirator's motives, the Court acknowledges that this case is brought to try Mr. Oster and to determine his mind set at the time of the alleged bribe acceptance. Therefore, establishing the issue of motive with respect to Mr. Picerno's cooperation with the State is not so central as to require Mr. Ferland's testimony when others are available. *Page 19 
C. Vouching for the State
Defendant Oster contends that Mr. Ferland, even if not a necessary witness called for a material matter, would still violate the defendant's constitutional rights by essentially vouching for the actions of the State. Defendant submitted at oral argument that as a prosecutor who participated in the pretrial investigations, Mr. Ferland's closing argument to the jury would serve to bolster the testimonies of the State's witnesses and bring to bear the influence that Mr. Ferland would have after trying the case and "bonding" with this jury. The Court is mindful that the issue of vouching was one of the very policy reasons that supported the development of Rule 3.7.See Birdman, 602 F.2d at 553-555. However, as a practical matter, if the Court were to accept defendant's suggestion that any prosecutor who responded to the police call and participated in the investigation could not try the case, then the Court would be setting precedent to disqualify prosecutors any time the Attorney General's Office arrived at police barracks to aid in the investigation of a crime. Following the defendant's reasoning through, any prosecutor present for this investigation could vouch for the activities of the other State officers who were also there. As a fact of this case, numerous members of the Attorney General's Office, including the Attorney General himself, were present during Mr. Picerno's investigation due to the widespread public interest in this case. It would follow from the defendant's argument that any prosecutor could be misunderstood by the jury as vouching for the activities of his or her fellow officers. Therefore, even if it were not Mr. Ferland delivering the closing statements — if, for example, Ms. Macktaz stated to the jury that the Attorney General's Office acted appropriately in this matter rather than Mr. Ferland — the result of vouching for the actions of the State would be the same. *Page 20 
The defendant asserts that Mr. Ferland's involvement is unique from that of the other prosecutors because he was the Head of the Criminal Division, and therefore the mastermind behind this investigation. However, Mr. Ferland testified that he was, in fact, following through with a plan discussed with his supervisors. See Ferland's Testimony at 47.[5] It therefore appears that Mr. Ferland was a member of the investigation team, and not exclusively the center of the plan. Furthermore, as noted above, the State has offered to redact Mr. Ferland's name from the record, which would significantly reduce the danger of the jury misinterpreting his closing statements. Therefore, this Court finds that Mr. Ferland's closing argument will cause no more of an issue of vouching than would the closing argument of any other member of the prosecution team.
D. Hardship to the State and Undue Delay
The Court must consider whether substitution of Mr. Ferland as lead prosecutor in this case will present the State with undue hardship. In general, Courts have required that the State make at least an argument as to the impediments of substituting prosecutors before the Court will consider the State's hardship. See Prantil, 764 F.2d at 552;Tesen, 2007 Mich. App. LEXIS 1663 (finding that disqualification of a prosecutor was appropriate where the State made no showing of hardship). Here, the State submitted at oral argument that the case material was so voluminous that it would be impossible for another prosecutor to prepare for trial in a mere forty-five days. It is well-settled that the "trial court must consider whether substituting prosecutors would disqualify the prosecutor with the most familiarity with the case, and require duplicative work, and whether this could lend itself to abuse by defendants who use this rule to try to *Page 21 
manipulate the prosecution of the case. This factor is tempered by the consideration of how much time before trial remains at the time of substitution." Johnston, 690 F.2d at 645. The issue of time before trial is central to this consideration. Where the defendant's request for a prosecutor's recusal is made well in advance of trial "the defendant's timely demand diminishe[s], if not eliminate[s], any consequent inconvenience to the government's case." Prantil, 764 F.2d at 552. Timing of the request is important both in terms of the strain that the consequent replacement will put on the State, and in terms of deciphering whether the defendant has made the motion in good faith, or merely for tactical advantage. Paperno, 429 N.E. 2d at 802.
Here, the trial date certain is only forty-five days away. However, the defendant contends that the State has been apprised of the possibility that Mr. Ferland would be a necessary witness for three to four years, as it named Mr. Ferland a witness for the pretrial suppression hearing with Mr. Picerno. While this Court acknowledges that the procedural dilemma in this case is one that has arisen out of unusual circumstances of which the State was fully aware, it finds that yet another change in the prosecution team would likely require a continuance of this already five-year-old case. This Court must consider the public interest in having this case tried, and the undue delay that would result from disqualifying the lead prosecutor this close to trial. Considering this factor in conjunction with this Court's analysis regarding the necessity and materiality of Mr. Ferland's testimony, this Court finds that the defendant has failed to meet his burden of showing a "compelling need" to call Mr. Ferland as a witness at trial.
 IV Conclusion
Considering the factors of necessity, materiality, hardship to the State and the potential for undue delay, this Court finds that defendant Oster has not met his burden under the "compelling *Page 22 
need" test, and therefore denies defendant's motion to disqualify Mr. Ferland as lead prosecutor in this case. This Court joins in the "judicial antipathy toward any deviation from the advocate-witness rule," and is persuaded that the rule requires that the prosecutor refrain from acting in a dual role. Prantil, 764 F.2d at 554. Therefore, as the defendant's motion to disqualify has been denied, the Court grants the State's motion in limine to prohibit the defense from calling Mr. Ferland as a witness for trial. This decision is made without foreclosing the possibility that the issues pertaining to it will resurface and require consideration at trial.
Counsel shall prepare the appropriate order for entry.
[1] Although some may not view the term "date certain" as significant, this Court finds that the setting of a date certain should nonetheless bind the parties to the extent possible. See Bergeron v.Roszkowski, 866 A.2d 1230 (R.I. 2005) (holding that a trial justice did not abuse her discretion when she dismissed a case for failure to prosecute after she had set a date certain for trial for which plaintiffs failed to prepare. The Court stated that "a trial justice is vested with great authority in managing his or her trial," and as it is "among the most difficult of all judicial assignments . . . the widest discretion must be given to calendar justices and trial justices in carrying out this enormously difficult function." Id. at 1235).
[2] There, the defendant and eleven co-defendants were indicted on several counts of violating the Drug Abuse Prevention and Control Act.Id. Defendant Johnston moved to suppress statements he had made to the Drug Enforcement Administration (DEA). U.S. Attorney Joseph Hosteny participated in the DEA's investigation of Johnston, and withdrew as counsel for the purposes of the suppression hearing, as he anticipated "some possibility" that he would be called as a witness. Id. at 640. He would continue to represent the state at trial. Id. At the suppression hearing, Defendant Johnston testified as to a telephone conversation he had had with Mr. Hosteny, complaining that the government had broken an agreement not to prosecute him in exchange for his cooperation.Id. at 641. The district court did not allow the state to call Mr. Hosteny as a witness against the defendant at the suppression hearing.Id.
[3] As options for approaching the potential issues that may arise from Mr. Picerno's trial testimony, the State has offered to stipulate that certain facts or statements are untrue. This would allow the defense to impeach Mr. Picerno on these facts, such as whether a private meeting between Mr. Ferland and Mr. Picerno took place, without necessitating Mr. Ferland's testimony. In addition, the State submits that Mr. Ferland's name could be redacted from all testimony, and he could be referred to simply as "a prosecutor." These offers will be considered as the case goes forward and the Court will determine a suitable solution.
[4] This Court recognizes that the Rules of Evidence have substituted the term "relevance" for "materiality." In this context, the Court has analyzed the case as to "materiality" for consistency with the pertinent case law on the issue of disqualification.
[5] Mr. Ferland was questioned regarding the State's offer not to prosecute Mr. Picerno's wife and son regarding alleged mortgage fraud in exchange for Mr. Picerno's cooperation. When asked whether Attorney General Whitehouse was consulted as to this arrangement, Mr. Ferland responded, "It is not a decision that would have been made unilaterally. I would have made the decision at least tentatively and then run that by the Attorney General for his final approval."